## OTIS *against* RAYMOND :

### IN ERROR.

*A.* being indebted to *B.*, and being also in embarrassed circumstances, and *October 20.* on the eve of absconding, put into the hands of *C.* certain notes, to secure *B.* and the other creditors of *A.*; *C.*, on receiving such notes, promising to deliver immediately to *B.* a sufficient amount thereof, to satisfy his claim, or in some other way to pay and secure him.    After *A.* had absconded, *B.*, who was ignorant of this arrangement, enquired of *C.* whether *A.* had made any provision for him ; whereupon *C.* " wickedly contriving and intending to deceive and defraud" *B.*, falsely declared to him, that *A.* had left no effects in *C.*'s hands for the benefit of *B.*, and had made no arrangement with *C.* for the payment or security of *B.*'s claim ; in consequence of which, *B.*, after having commenced a process of foreign attachment against *C.* as the garnishee of *A.*, was induced to accept a share of one of the notes so left with *C*, apportioned among *B.* and the other attaching creditors, the avails of which were about one half only of *B.*'s claim against *A.*, the residue of that claim being lost.    In an action on the case, brought by *B.* against *C.*, stating these facts, it was held, that the declaration was insufficient : for, the alleged fraud consisted in the suppression or misrepresentation of facts, which the defendant was under no legal obligation to communicate to the plaintiff ; and no damage resulted to the plaintiff, from such suppression or misrepresentation, because it had no tendency to produce any act or omission to the plaintiff's prejudice.

THIS was an action on the case, brought by *Raymond* against *Otis.*    The declaration was, in substance, as follows : That on the 6th of *April*, 1818, *Andrew Billings* was justly indebted to the plaintiff, and the plaintiff was indorser for him on two promissory notes at the *New-London* bank, to the amount, in the whole, of about 400 dollars ; that said *Billings* was also indebted, at the same time, to sundry persons, and sundry persons were indorsers and sureties for him, to a large amount; that he was much embarrassed in his pecuniary concerns, and was indebted to a greater amount than the value of all his property, and in consequence of such embarrassments, he was about to abscond from the state ; that being disposed to indemnify and secure the plaintiff, and certain other indorsers and sureties, and with a view to that object, said *Billings*, at *Montville*, on the day above mentioned, and on the eve of his departure from the state, delivered to the defendant sundry promissory notes, against *Christopher A. Miner*, indorsed in blank,

New-London,
October,
1820.

Otis
v.
Raymond.

for the sum, in the whole, of about 1325 dollars, which were good and collectable, said *Miner* being abundantly responsible for the amount thereof; that the defendant then and there received said notes, for the purpose and object aforesaid, and, at the time of receiving them, agreed and promised said *Billings*, to deliver immediately to, and leave with, the plaintiff, a sufficient amount of said notes, to secure and satisfy him for his debt and indorsements aforesaid, or in some other way to pay, satisfy, or secure him, for and on account of such debt and indorsements; that the defendant had no interest in, or lien on said notes; that immediately after the delivery thereof to the defendant, said *Billings* absconded, and went out of the state, to parts to the plaintiff unknown, then being, and ever since having been, a bankrupt, wholly insolvent, and unable to pay the plaintiff; nor had he, nor has he since had, any other means of securing the plaintiff, except the notes so delivered to the defendant, as aforesaid; that the plaintiff, not having been paid or secured, was afterwards compelled to pay and take up notes of said *Billings*, by him indorsed as aforesaid, to the amount of more than 362 dollars; and that the defendant, his promise notwithstanding, wholly neglected to deliver said notes, or any part thereof, to the plaintiff, or in any way or manner, to pay, secure, or satisfy the plaintiff.

The plaintiff further declared, that the delivery of said notes to the defendant, as aforesaid, and the arrangement thus made for the plaintiff's security, were wholly unknown to him, but thinking and hoping, after he had knowledge that said *Billings* had absconded, that some provision or arrangement for his security, might be made with the defendant, as the particular friend, and confidential adviser of said *Billings*, the plaintiff, soon afterwards, made application to the defendant, and of him demanded to know, whether said *Billings* had left any property, effects, debts, or security, in his, the defendant's hands and possession, or any provision or arrangement, to pay or secure the plaintiff, for his debt and indorsements aforesaid; that the defendant, wickedly contriving and intending to deceive and defraud the plaintiff, falsely and fraudulently affirmed and declared to the plaintiff, that he had no property, effects or debts of said *Billings*, left in his hands or possession, to pay or secure the plaintiff, for his debt and indorsements aforesaid, or any part thereof; that the defendant also falsely de-

clared to the plaintiff, that said *Billings* had made no arrange-

ment with him, the defendant, for paying or securing the plain-
tiff, for his debt or indorsements, he, the defendant, well know-
ing all the facts aforesaid, and that said notes against said
*Miner*, were delivered to him for the purpose aforesaid, and
were then in his, the defendant's, hands, and well knowing,
that his said answer to said application and demand, was wholly
false ; and that relying and confiding in the false declarations
and affirmations of the defendant aforesaid, the plaintiff neg-
lected to make any other or further efforts or endeavours, to
get said notes, or either of them, out of the hands of the de-
fendant.

The plaintiff further declared, that soon after the defend-
ant's false representations to him, as aforesaid, he prayed out
a writ of foreign attachment against said *Billings*, as did also
sundry other creditors of said *Billings*, which was served on
the defendant and said *Miner*, for the purpose of holding and
securing the debts and effects of said *Billings*, in the defend-
ant's hands ; that the plaintiff, and the other attaching credit-
ors, agreed with the defendant, to divide and apportion one of
the notes aforesaid, then remaining in the defendant's hands,
for the sum of 450 dollars, which last-mentioned note, the de-
fendant declared, affirmed and represented to the plaintiff, to
be the only one of said notes then remaining in the defendant's
hands ; that the same note was so apportioned, with the know-
ledge and consent of the defendant, to and among the said at-
taching creditors, as that the plaintiff received the sum of
about 200 dollars only, and said note was accordingly there-
upon delivered up to said *Miner*, by consent of the plaintiff, and
the same was cancelled and destroyed, by means whereof,
said note was, and is, put wholly out of the power and controul
of the plaintiff ; that at the time of praying out said writ of at-
tachment, and at the time of dividing and apportioning the
amount of said note as aforesaid, the plaintiff was ignorant,
that it had been left in the hands of the defendant, for the use
and benefit of the plaintiff as aforesaid, or that any arrange-
ment had been made, by said *Billings*, with the defendant, for
securing or satisfying, the plaintiff ; that the defendant, at all
times, fraudulently concealed these facts from the knowledge
of the plaintiff, whereby the plaintiff was induced to pray out
said writ of attachment, and to apportion and divide the

*New-London,*
*October,*
*1820.*

Otis
*v.*
Raymond.

amount of said note for 450 dollars, to and among the creditors of said *Billings,* as aforesaid; and that by reason of the false, deceitful and fraudulent affirmations and representations of the defendant, as aforesaid, the plaintiff hath been deceived and defrauded, and hath lost the sum due to him from said *Billings, viz.* the sum of 200 dollars, and the costs of said writ, *viz.* 20 dollars.

The defendant pleaded *not guilty;* and on this issue the plaintiff obtained a verdict. The defendant then moved in arrest of judgment, for the insufficiency of the declaration. The court over-ruled this motion, and entered up judgment on the verdict; whereupon the defendant brought the present writ of error, assigning the general error.

*Goddard* and *Cleaveland,* for the plaintiff in error, after observing, that in order to sustain an action on the case, in the nature of deceit, the plaintiff must shew fraud and damage combined; fraud without damage, or damage without fraud, furnishing no ground of action; contended, 1. That the transaction, disclosed by the declaration in this case, produced no legal damage to *Raymond,* the plaintiff below. *Billings,* being indebted to *Raymond,* put into the hands of *Otis* certain notes, for *Raymond's* security; and *Otis,* in consideration of receiving such notes, promised to secure and satisfy *Raymond. Raymond* then had an express promise, on which he might have, and may still have, his remedy, in a proper action. The concealment of facts, by *Otis,* did no injury to *Raymond.* He was not induced by it to give further credit to *Billings.* The only consequence resulting from it, was, that *Raymond* commenced a process of foreign attachment, by which he got 200 dollars of his claim.

2. That the declaration states no fraud on the part of *Otis.* There can be no fraud, unless a representation is made *with a view* to induce some person to do, or to forbear to do, some act, to his prejudice. But the declaration does not state, that *Otis* concealed the transaction between *Billings* and himself, with intent to induce *Raymond* to do, or to forbear to do, any act, to his prejudice. The general averment, that "the defendant wickedly contrived and intended to deceive and defraud the plaintiff," amounts to nothing. Fraud never consists in denying an obligation, or telling a naked falsehood. *Pas-*

ley & al. v. *Freeman*, 3 *Term Rep.* 65.    *Eyre & al.* v. *Duns*-  New-London,
*ford*, 1 *East* 318.    *Haycraft* v. *Creasy*, 2 *East* 108.    *Tapp &*    October,
al. v. *Lee*, 3 *Bos. & Pull.* 367.    *Scott & al.* v. *Lara*, *Peake's*    1820.
*Ca.* 226.

Otis
*v.*
Raymond.

*Gurley* and *Isham*, for the defendant in error, admitting that fraud and damage must concur for the support of this action, insisted, 1. That these requisites appeared, sufficiently, from the declaration.    The fraud consists in a suppression of the truth, and in false declarations, by *Otis*, with regard to facts, which *Raymond* had an interest in knowing ; *Otis* having full notice of such interest, and " wickedly contriving, and intending," by such suppression of the truth and false declarations. " to deceive and defraud" *Raymond*.    The damage is stated no less explicitly.    It consisted in the loss of the balance of *Raymond's* claim against *Billings*, amounting to 200 dollars ; which loss was occasioned wholly by the fraud of *Otis*.    The *promise* stated in the declaration, cannot defeat this action. It is a part of the plaintiff's *case* ; without it, his story would have been imperfect ; a link would have been wanting in the chain of means, by which the fraud was effected.    And if an action would lie on the promise, does it follow, that the party is to be remediless for the fraud ?    Does it shew, that he has sustained no damage, by the fraud ?    *Stoyel* v. *Westcott*, 2 *Day* 418.    *Bulkley* v. *Storer*, 2 *Day* 531.

2. That if the fraud and damage, requisite to sustain an action on the case, in the nature of deceit, were wanting ; this was a good declaration in *assumpsit*, as it stated a promise, on sufficient consideration, and a breach.

HOSMER, Ch. J.    *Daniel F. Raymond* brought an action on the case against *Joseph Otis*, for a fraudulent misrepresentation of facts, to his damage.    The following is the substance of the case, as it appears on the record.

*Raymond* was the indorser of one *Andrew Billings*, on notes for his accommodation, to the amount of about 400 dollars. *Billings* being a bankrupt, and intending to abscond, which intention he soon afterwards executed, put into the possession of *Otis*, several notes of hand against *Christopher A. Miner*, a man of abundant property, to secure *Raymond* and his other

creditors. On their reception, *Otis* promised *Billings* to de-liver immediately to *Raymond,* a sufficient amount of them to satisfy him for his indorsements, or *in some other way to pay and secure him.* This arrangement was unknown to *Raymond;* but suspecting that something had been done for his benefit, he made enquiry of *Otis* on the subject, who, with a fraudulent intent, declared, that no property or debts had been put into his hands, by *Billings,* for the above purpose. Confiding in this, *Raymond* divided with the other creditors of *Billings* one of the notes left with *Otis,* after having sued *Billings,* by for-eign attachment, in which *Otis* was the garnishee. By this proceeding, *Raymond* lost about 200 dollars of his demand against *Billings.*

To sustain the action of *Raymond* against *Otis,* there must have been a fraud committed by the latter, and damages re-sulting from it to the former. *Pasley* v. *Freeman,* 3 *Term Rep.* 56. *Vernon* v. *Keys,* 12 *East* 632.

The supposed *fraud* consists in having suppressed the knowledge of the transaction with *Billings,* and of the contract made with him, and not in the non-delivery of the notes. *Otis* was under no obligation to deliver to *Raymond* any of the notes confided to him. He contracted *in the alternative,* either to deliver them, *or* to pay and secure *Raymond;* and it was op-tional with him to do either, at his pleasure. It results, then, that the non-delivery of the notes, was no breach of any obli-gation; and this reduces the case to the enquiry, whether the suppression of information by *Otis,* that he contracted to de-liver the property, or to pay *Raymond,* is, in law, a fraud; for, if the suppression of the truth, with a fraudulent intent, was not an actionable deceit, neither was the misrepresentation, made with the same design.

Whether *Otis* was under a moral obligation to impart the requisite information; or whether he violated his veracity, if he was not legally bound to speak the truth; are unnecessary questions. " The fraud must consist," as was said by Lord *Ellenborough,* in *Vernon* v. *Keys,* " in depriving the plaintiff, by deceitful means, of some benefit, which the law entitled him to demand or expect." Now, with respect to the notes, *Raymond* had no right " to demand or expect" them; and in relation to the assumption of *Otis,* that remains in unabated force. Of what, then, was *Raymond* deprived, by the misrep-

resentation of *Otis ?* Of knowledge that *Otis* had contracted to pay or secure his demand ; to communicate which, *Otis* was not bound, by any legal obligation.    I do not find the footsteps of an action for the fraudulent suppression of information, which the party was not obliged by law to supply ; and sure I am, that such a principle would be of widely mischievous effect.

New-London,
October,
1820.

Otis
*v.*
Raymond.

. The declaration of *Raymond* is equally defective in another essential particular, as no *damage* resulted from the misrepresentation of *Otis*.    It had no tendency to produce any act or omission, to *Raymond's* prejudice.    The silence of *Otis* would have been equally injurious, leaving *Raymond* in *statu quo*, without the addition of any new motive to action, or inaction.    No impulse was given to his conduct.    It was precisely the same as it would have been, had he never conversed with *Otis ;* and being left to pursue the dictates of his own mind, unenlightened by information, which he had no legal right to expect or demand, the damage, if any, could not result from the act of the defendant.

I am of opinion, that there is manifest error in the judgment below.

The other Judges were of the same opinion.

Judgment reversed.