Summers, C. J.
The court charged the jury that the second cause of action was founded upon an express warranty and upon false and fraudulent representations, and then said that there was no evidence to support that cause of action and that the jury should not consider it. The court then charged the jury, before argument:
“If you find from the evidence that the defendants were breeders or dealers in breeding horses and that the stallion, Royal Windsor, was sold to plaintiff for breeding purposes, and that it was so known and understood by both parties, then I charge you, in the absence of express warranty, that there was an implied warranty that said *296 stallion would be reasonably fit for breeding purposes and a reasonably sure average breeder; and if you shall also further find from the evidence that said stallion was not a reasonably sure foal getter and reasonably fit for said purpose, without any fault of plaintiff, you should find for the plaintiff, J. G. Miser.”
The court was in error in both instructions. The second cause of action was not based upon an express warranty but upon deceit, and it appears from page 67 of the record that the plaintiff testified as follows: “Of course, I knew where' he had bought the horse before that, from Mr. Galbraith. I asked him on what terms he had bought the horse and he told me he had bought that on a 60 per cent, guarantee and he said that he had fulfilled that guarantee, that he was a sure breeder with them. He said that he was a sure breeder and had been a sure breeder with them, and I thought, if he was sure with them, he would be sure with me. I bought him with that understanding.”
The first cause of action was grounded upon an implied warranty, and the court instructed the jury that if the defendants were breeders or dealers in breeding horses and sold the stallion to the plaintiff for breeding purposes, and it was so known and understood by both parties, then, in the absence of an express warranty, there was an implied warranty that the stallion would be reasonably fit for breeding purposes and a reasonably sure average breeder; and that if they found that he was not a reasonably sure foal getter and reasonably fit for that purpose, without any fault *297 of plaintiff, they should find for the plaintiff. There was no evidence tending to prove that the defendants were breeders or dealers, and, if they were, the instruction is contrary to the law laid down by this court in Hadley et al. v. The Clinton County Importing Co., 13 Ohio St., 502.
On page 171 of the record McDonald- testified, and his testimony is uncontradicted, that he was not such a producer or dealer, that he had several teams, and that wishing to raise some good horses for his own use, and in order to help Mr. Thompson buy a good horse when his other horse died, he took a half interest in the stallion, that he bred some of his mares to the horse, that he had nothing to do with the sale of him, and when Mr. Thompson first asked permission to sell him he said “no,” but that he afterwards told him to sell him if he wished to. And as to Mr. Thompson, the evidence does not show that he was a dealer in stallions, but that he had a couple of young stallions and offered to sell one of them to the plaintiff, that the plaintiff came to his place to see these stallions, but took a fancy to the horse Royal Windsor, that he remained over night at Mr. Thompson’s residence, examined the stallion Royal Windsor several times and also looked at a number of his colts, some owned by -Mr. Thompson and others in the neighborhood, and at some mares that were in foal by the stallion. It further appears from the evidence that the plaintiff himself had kept a stallion for breeding purposes for a number of years.
In Hadley et al. v. The Clinton County Import *298 ing Co., supra, there was a sale at auction of imported breeding cattle, and the plaintiffs purchased a cow for breeding purposes paying for her $1,050. A short time previous to the sale, the vendors had, by artificial means, taken from the cow a calf which had the appearance of being dead for several weeks prior to its delivery, and it was claimed that this in the opinion of breeders greatly, if not totally destroyed the value of the cow for breeding purposes, and- that this fact had not been made known to the purchasers. The suit was to recover damages, either on account of a warranty, or on account of fraud. Tt was held: “1. In executed contracts of sale of personal property, the rule of the common law is, caveat emptor, and there is no implied warranty as to the quality of the article sold. But' fraud in the vendor constitutes an exception to the rule. 2. Where the evidence tended to^ show, that a cow had been sold and purchased for a breeder, and to improve the plaintiff’s herd of cattle, that there was a latent defect, which would greatfy impair, if not destroy her capacity to breed, that this was known to the vendors, and unknown to the vendees, and was not disclosed at the time of sale, and a charge was asked that if these facts were found by the jury, then, and in that case, the defendants would be guilty of practicing a fraud. Held: that the charge was properly refused, as asking from the court a conclusion of fact and not matter of law.”
The common law maxim of caveat emptor is stated as follows: “It is the well settled and general rule of the common law, differing in this *299 respect from the civil law, that, upon the present and executed sale of a definite, ascertained and existing chattel which is open to the inspection of the buyer, and of which the seller is neither the manufacturer nor the grower, no warranty whatever as to quality, fitness or condition is implied. In such cases, unless there is fraud or the seller gives an express warranty, the rule of the common law is practically without exception that the buyer purchases at his own risk. Caveat emptor is the invariable maxim*. If the buyer wishes further protection than his own inspection or judgment can give him, he must exact a warranty.” 2 Mechem on Sales, Section 1311; Rodgers & Co. v. Niles & Co., 11 Ohio St., 48, 53; Jones v. Just, L. R., 3 Q. B., 197. There are many exceptions to the rule. Scott, J., in Rodgers & Co. v. Niles & Co., 11 Ohio St., 48, 53, says that the exceptions are found in cases where it is evident that the purchaser did not rely upon his own judgment of the quality of the article purchased; the circumstances showing that no examination was possible on his part, or the contract being such as to show that the obligation and responsibility of ascertaining and judging of the quality was thrown upon the vendor, as where he agrees to furnish an article for a particular purpose or use.
In Scott v. Renick, 1 B. Monroe, 63, in a suit for a rescission of the purchase of an imported short horn cow, Mr. Chief Justice Robertson said: “There is no proof of either fraud, express warranty, or even any misrepresentation by Renick. And we" cannot admit that Scott, having as he had, as much or nearly as much acquaintance as *300 Renick had with the cow when he made the contract of purchase, the law implied any warranty that she was, or would continue to be a good breeder merely from the fact that she was bought with that expectation and for that kind of use. In such a sale of such an article, it seems -to us that custom, policy and law unite in applying the maxim caveat emptor, -and that the purchaser takes the thing upon his own judgment, risking both the quality and the value of it.” In White v. Stelloh, 74 Wis., 435, it is held:- “A bull calf at the time of sale having been but three months old, apparently free from defects, and present to the view of the purchaser, it cannot be held as a matter of law that his sterility, which transpired two years later, existed at the time of sale and that there was an implied warranty that at maturity he would possess the power of procreation.” In McQuaid v. Ross, 85 Wis., 492, it is held: “Where, upon the sale of a bull, both parties are alike destitute of knowledge or the means of forming an intelligent judgment as to his ability to generate his kind, and there is no misrepresentation' or fraud and no express warranty, no warranty can be implied in that respect merely because a full price was paid for a bull for breeding purposes and the seller knew that he was being purchased for that purpose.” In Merchants’ & Mechanics’ Savings Bank v. Fraze, 9 Ind. App., 161, 53 Am. St. Rep., 341, it is held that there is an implied warranty in the sale of a stallion for breeding purposes, when the sale is made by one who raises horses of that kind, deals in them, and therefore knows their qualities, that he shall be *301 reasonably fit for breeding purposes.- This case seems to have been followed in the instant case, but in that case, the sellers were producers and dealers, and the contract was treated as executory, though it was stated in the opinion that it was not strictly such. As we understand Hadley et al. v. The Clinton County Importing Co., 13 Ohio St., 502, supra, the rule of caveat emptor applies to the present case and the only issue for the jury was that of fraud. The contract was in writing and contains no warranty, and the purchaser seems to have assumed that the horse was a sure foal getter, for he agrees to pay an additional sum if the liorse covered a stated number of mares, but he avers in his petition that the defendants made false representations upon which he relied and upon the trial he so testified, so that the judgment must be reversed and the cause remanded for a new trial.

Judgment reversed.

Davis, Shauck and Price, JJ., concur.