WILLIAM A. LYNCH, Receiver, v. CHARLES CURFMAN.[1]

June 19, 1896.

Nos. 9876—(192).

**Sale—Breach of Warranty.**

The submission by the court to the jury of the question whether the vendor warranted the quality of a chattel, and the instructions of the court as to the effect of a breach of the warranty, if one existed, *held* to have been erroneous.

**Same—Effect.**

The breach of a warranty neither rescinds the sale nor gives the vendee a right to rescind, but merely a right of action for damages.

**Same—Vendor's Expressions of Opinion.**

Where the vendor makes statements as to the quality of the article, but accompanied by an express and positive refusal to warrant it, and a like notice to the vendee that he will not and does not warrant it, his statements as to quality must be deemed mere expressions of opinion, and not a contract of warranty, at least in the absence of any fraud or deceit, and where the property is present for the inspection of the vendee.

[1] Reported in 68 N. W. 5.

**Same—Parol Evidence to Vary Written Contract.**

The admission of certain oral evidence *held* not to have been in conflict with the rule that the terms of a written contract cannot be contradicted or varied by contemporaneous oral evidence, the oral contract being upon an entirely different subject from that covered by the written one, although both contracts were parts of the same transaction.

Appeal by plaintiff from a judgment of the district court for Clay county, in favor of defendant, after a trial before Searle, J., and a jury. Reversed.

*George E. Perley* and *Newman, Spalding & Phelps*, for appellant. *C. A. Nye*, for respondent.

MITCHELL, J. The intervenor bought from plaintiff a second-hand threshing machine, for the purchase price of which he gave his note for $150, and as security for its payment assigned to plaintiff a note for $200, secured by chattel mortgage on a span of horses and dray, executed to him by the defendant, Charles Curfman. As this machine failed to do good work, the intervenor shortly afterwards bought of plaintiff a new machine, the regular price of which was $510. The order and contract of purchase of the new machine is Exhibit A in the paper book. On the delivery of the machine the intervenor executed to plaintiff notes for $35, $87.50, and $237.50, as provided for in the contract. This new machine not fulfilling the warranty, it was subsequently agreed by the parties that the sale should be rescinded, the machine returned by the intervenor, and the notes which plaintiff held for its purchase money returned. The intervenor returned the machine, and some time afterwards the plaintiff surrendered to him the notes for $35, $87.50, and $237.50, but not the note for $150, originally given for the old machine, or the collateral note and chattel mortgage for $200 against the defendant. So far the parties agree as to the facts. The next year plaintiff brought this action against the defendant to recover possession of the property covered by the chattel mortgage.

The intervenor became a party to the suit, and, in addition to these facts, alleged that when he purchased the old machine plaintiff agreed with him that it would do good work, and was in good repair; and that, if it failed to do good work, or was found to be in any manner defective, plaintiff would make it in all respects to conform to

its representations and agreements; that the machine was not in good repair, and would not do good work, and was utterly worthless as a thresher; that he notified plaintiff of these defects, and requested it to remedy them; that after several ineffectual attempts on part of plaintiff to do so, a new contract was made by the parties, by which the sale of the old machine was entirely rescinded, and a new machine, in place of it, sold and delivered by plaintiff to the intervenor, for the consideration of the note for $150 given for the old machine (which was to stand as a payment on the new machine), and of additional notes of the intervenor for $35, $87.50, and $237.50, respectively; that, as this new machine failed to fulfill the warranty with which it was sold, it was subsequently agreed between intervenor and plaintiff that this sale should also be, and was, rescinded; that the intervenor returned the machine, and demanded back all his notes and securities; that plaintiff afterwards returned him three of the notes, but not the $150 note, or the collateral note and mortgage for $200, although the agreement at the time the sale was rescinded was that they should all be returned to him. Intervenor's demand for judgment was for the return to the defendant of the property described in the complaint or its alternative value, and for his costs and disbursements, and for such further relief as to the court should seem just.

It will be seen from this that, while the intervenor alleges certain representations and agreements on part of the plaintiff in the nature of a warranty of the quality of the old machine, he neither alleges nor claims any damages on account of their breach; but simply alleges them by way of inducement and consideration for the new contract when the new machine was purchased. His defense was that by this new contract the former one for the sale and purchase of the old machine was entirely rescinded and wiped out as fully as if never made, and the note for $150 thereafter stood as a partial payment on the purchase price of the new machine; and hence, by virtue of the subsequent arrangement by which it was agreed that the sale of the new machine was also to be set aside, he was entitled to a return of the $150 note and collateral mortgage, as well as his other notes. On the other hand, the claim of the plaintiff, both in its answer and its proof, was that it was no part of the agreement, when the new machine was sold, that the sale of the old machine was to

be rescinded, but, on the contrary, that that sale was to remain unaffected; that the intervenor was still to remain liable on the $150 note as the price of the old machine, and not as part of the purchase price of the new machine, and that the three notes for the aggregate sum of $360 represented the whole of the purchase price of the latter; and hence, when the sale of the new machine was rescinded, the intervenor was not entitled to the return of the $150, or of the chattel mortgage assigned as security for its payment. Therefore, so far, at least, as the pleadings go, the only material issue between the parties was as to the terms of the contract made between them when the new machine was purchased; and upon that issue it was wholly immaterial whether the old machine was sold with or without a warranty.

Upon the trial some evidence was introduced by intervenor tending to show that plaintiff's agent made certain statements as to the quality of the old machine which, standing by themselves, might have constituted a warranty, but, as we read the record, the uncontradicted evidence is that these statements were accompanied by an express and positive notice and declaration to the intervenor by the agent that he did not and would not warrant the machine. It was present, and subject to the inspection of the intervenor, and there was no claim that any fraud or deceit was practiced by the agent. And there is nothing in the record to indicate that the intervenor offered this evidence of the so-called "warranty" for any other purpose than that for which he pleaded it, viz. as tending to show an inducement and consideration for the subsequent new agreement; for he offered no evidence of damages resulting from a breach of the alleged warranty.

Upon this state of the pleadings and evidence the trial court instructed the jury, in substance, that the first and the vital and important question in the case was whether there was a warranty of the old machine; that they should take up that question first; and that, if they found that there was such a warranty, and a breach of it, that would be an end of the case, and would constitute a defense to this action, and that plaintiff could not recover. This instruction, which was excepted to, and is here assigned as error, was clearly erroneous, for three reasons. There was no such issue in the case. There was no evidence of a warranty to submit to the jury. War-

ranties are contracts, and the rules for interpreting them or determining whether they were made do not differ from the rules applied in the case of any other contracts. At least, in the absence of fraud or deceit, where a vendor makes statements as to the quality of the article sold, accompanied, however, by a positive and express refusal to covenant it, or a like statement and notice to the vendee that he does not and will not warrant it, his statements as to the quality of the article must be deemed mere expressions of opinion and not a contract of warranty. And, lastly, the breach of a warranty does not rescind a sale or give the vendee a right to rescind, but merely a right of action for damages. In this case, even if a warranty and a breach of it had been shown, there was no evidence of damages.

This erroneous instruction was clearly prejudicial, unless the evidence on the real issue in the case was so conclusive as to require a verdict in favor of the defendant and intervenor. In view of the admitted facts, it seems to us that intervenor's version of the terms of the contract at the time the new machine was purchased was so reasonable and probable that it might be rightly claimed that the preponderance of evidence was on his side; but, in view of the rebutting evidence on part of the plaintiff, the question was one for the jury; and under the instructions of the court they may never have reached that question.

With a view to another trial, there are one or two other questions raised by the briefs which should be noticed.

It was competent for the intervenor to prove by oral evidence that at the time of the purchase of the new machine it was also, and as part of the same transaction, agreed that the sale of the old machine should be rescinded and set aside, and that the $150 note given therefor should be retained by the plaintiff as a partial payment on the purchase price of the new machine. The admission of such evidence would not violate the rule that a written contract cannot be contradicted or varied by contemporaneous oral evidence. The written contract (Exhibit A) does not refer to the matter of the sale of the old machine, and the evidence as to the rescission of that sale falls within the familiar rule that parol evidence is admissible to prove an oral agreement relating to a different subject-matter from that covered by the written contract, although both contracts may be parts of the same transaction. Nor does evidence that, as part of

this rescission, it was agreed that the $150 note was to stand as a part payment on the price of the new machine, in any way contradict or vary the terms of the written contract. Such an agreement is entirely consistent with the provision that on the delivery of the new machine intervenor was to pay, or give his notes for, $360. Moreover, the written contract contains an express promise to pay the $150 note, but the writing is indefinite and ambiguous as to what was the consideration for that promise,—whether it was the original consideration for which it was given, to wit, the old machine, or a new consideration, to wit, the new machine.

Evidence of the rental value or value of the use of the property while detained during the pendency of the action was admissible under the answer of the original defendant, who, if any one, was entitled to damages for such detention. It is proper in this connection to call attention to the wild estimates of damages often indulged in by juries and witnesses in cases of this and similar classes. The property in this case consisted of a dray and a span of horses, without driver, feed, or harness, confessedly all worth only $250. There was no claim for special damages, and no evidence of a deterioration of the value of the property by either its use or abuse; and yet the intervenor and some of his witnesses testified that the value of the use of this property for the two years and a half during the pendency of the action was $2 a day, which would amount to over $1,800. It may be true that neither courts nor juries can take judicial notice of the value of the use of property, but there must be some limit even to judicial credulity and ignorance on such subjects; and every judge and juror knows—and is bound to act on his knowledge—that any such estimate as above of the value of the use of this property was simply absurd. The jury were much more modest than the witnesses in their estimate, for they awarded the defendant only $264 damages, which, however, was still equal to interest on the value of the property at the rate of over 48 per cent. per annum. In view of the frequency with which we are confronted with what seems to us excessive verdicts for damages in cases involving the unlawful detention of personal property, the breach of warranty on the sale of chattels and the like, we deem it not improper to suggest to the learned trial judges of the state that juries should always be carefully and clearly instructed in such cases as to the rules that should

govern them in arriving at the proper measure of damages. This suggestion is not made with any special reference to the present case, for the jury was moderate in their assessment of damages as compared with many cases which have come to our notice.

Order reversed.