## CAVANAGH v. A. W. STEVENS CO.

In an action for breach of warranty in the sale of a traction engine, consisting in alleged defective flues, plaintiff's measure of damages was the difference between the value of the machine as it was when delivered and its value had it been as warranted.

Where plaintiff used a traction engine a whole season with good results, and then replaced the flues, which he claimed were originally defective, he could not recover the whole cost of replacing the flues in an action for breach of warranty.

Where plaintiff purchased a traction engine of defendant under a warranty that it would burn either straw or coal, and a coal burner was of less value than a straw burner, his measure of damages, on it being found that the engine would not burn straw, was the difference in the market value between the coal and straw burner at the time the engine was deliverd.

In an action for breach of warranty in the sale of a traction engine, in that it was a coal and not a straw burner, plaintiff having accepted and used the engine satisfactorily, evidence as to the difference of the expense to plaintiff of operating a coal and a straw burner was inadmissible, since the measure of damages was the difference between the market value of the two classes of burners, and the evidence was not directed to the establishment of such value.

(Opinion filed, Dec. 1, 1909.)

Appeal from Circuit Court, Codington County. Hon. GEORGE H. MARQUIS, Judge.

Action by Jim Cavanagh against the A. W. Stevens Company. Judgment for plaintiff, and defendant appeals. Reversed.

*Irvin H. Myers,* for appellant. *Glass & Snyder,* for respondent.

WHITING, J. This action was brought to recover damages which plaintiff claims he has suffered owing to the breach of certain warranties, which plaintiff alleges the defendant made and entered into upon the sale by said defendant to the plaintiff of one certain threshing outfit, consisting of a traction engine, separator, feeder, windstacker, etc. The only warranties necessary to consider are those claimed in connection with the traction engine. It appears that plaintiff purchased said engine under a written order, which order had annexed thereto, and as a part thereof, certain warranties, to the effect that the machine was made of good material and built in a workmanlike manner. Such written order contained the usual provisions found in machine contracts, whereby the company are to be given notice of any defects within a time fixed, and also provided specifically as to the rights of each party in case that the machine was found not to fulfill the warranty. There was no warranty as to the work which said engine would perform, nor as to the expense for running same; but it appears that, some time after the engine was started, defendant wrote plaintiff a letter making certain assertions as to work said engine would do and certain promises

in case the engine could not be made to do satisfactory work, and either because the court considered that in this case there is an implied warranty as to fitness of the engine for the work contemplated or owing to the letter above mentioned, or because the court considered it material in determining the value of a coal-burner engine, the court admitted, over defendant's objection, testimony as to the fitness of the engine for work and as to the expense of running same. Plaintiff, however, finally based all claims for damages on the following grounds: It appears undisputed that the order was for a straw-burner engine, and it is the claim of the plaintiff that the engine furnished him was unfitted for burning straw, and that he could use it only as a coal burner, and that he was damaged owing to the fact that it was a coal burner instead of straw burner. Plaintiff also claimed damages for defects in the construction of the engine. These specific defects will be hereinafter mentioned. It stands admitted that the purchase price of the engine was $1,400, and it was the claim of the defendant that, while a straw-burner engine, such as his order called for, would have been worth $1,400, the engine he received, owing to defective construction and to its being a coal burner, was only worth $515, and from the verdict of the jury it would appear that they found for the plaintiff to the full extent of his claimed damages, to wit, $885 and interest.

The respondent filed no brief in this court. While there are many questions raised by the appellant upon this appeal, going to the points as to whether or not the plaintiff was estopped by the result of another trial, as to whether under the contract the plaintiff had waived the right to sue for damages and limited his right merely to rescission, as to whether or not plaintiff had given the notices required by the contract, and as to whether, under the contract and other proof, there was any evidence of any warranties other than the express warranty as to workmanship and material, we shall only consider the one question as to whether, under the theory entertained by the trial court as shown by its instructions, there was evidence to support the verdict; the plaintiff having assigned the insufficiency of the evi-

dence to support such verdict. The following from the instructions give us all that is material to this question: "The plaintiff was entitled under the order to receive an engine made of good material, built in a workmanlike manner, and reasonably fit to furnish power in threshing with the use of straw as fuel. * * * He claims: That the engine received by him was not built of good material and in a workman like manner and that he has been damaged in the sum of $285. That the same embraces the following items, to wit: $100 on account of brackets defectively set; $10 on account of defective eccentric rod; $125 on account of defective flues; and $50 on account of the fire box not being properly built, in this, that the bolts holding the flame sheet leaked. And that the said engine was not reasonably fit to furnish power in threshing with the use of straw as fuel, and that he has been damaged thereby in the sum of $600. * * * The plaintiff claims that had the engine been reasonably fit for the purpose aforesaid, and been made of good material and built in a workmanlike manner, it would have been worth $1,400; but that, owing to its not being so made, built, and fit, it was not worth over $515. * * * The defendant claims that the engine was made of good material, built in a workmanlike manner, and fit for the purpose aforesaid, * * * and further that as to the engine it was reasonably worth $1,400. * * * Your attention is called to this rule: The detriment caused by a breach of the warranty of the quality of personal property is deemed to be the excess, if any, of the value which the property would have had, at the time to which the warranty refers, if it had been complied with, over its actual value at that time. If the plaintiff has proven to your satisfaction, by a preponderance of the evidence, the existence of the facts claimed by him, he is entitled to recover as damages the excess, if any, of the value which the engine would have had at the time it was delivered to him, had it been made of good material, built in a workmanlike manner, and fit for the aforesaid purpose, over its actual value at that time."

As regards the items going to make up the $285, mentioned in the first part of said instructions, we would state that, while

it would appear to us that the estimate made by the plaintiff in relation to his damages was excessive, we would only call attention to the evidence in relation to the defective flues. It is the claim of the plaintiff that the flues were defective, resulting in a leakage; but it appears that, regardless of such leakage, he run the engine throughout the first season, to wit, the season of 1902, and did a good fall's work with such threshing outfit, and no proof is offered to show what, if any, damage he suffered through the flues leaking. At the commencement of the second season, he testified that he put in a complete new set of flues, and that the expense of putting same in was $125. He does not state, although questioned thereon, as to what the new flues cost, nor as to what the work of putting same in was worth, but seems in this case, as well as in regard to the other items, to make a sort of guess as to the amount of damage claimed. It will be readily seen that with no evidence as to the damage from leaking flues, and the sole evidence upon this point relating to the expense of replacing such flues after they had been used one entire threshing season, the plaintiff would not be entitled to recover the full amount of replacing such flues; while, if the flues had been so defective, when the engine was purchased, that plaintiff had to replace the same at that time, he would have been entitled to have recovered for the expense of replacing them. This must be the result from the rule laid down by the court in its instructions, and which is the correct rule of law: That the measure of damage is the difference in value, at the time of purchase, between the machine as it was and its value if it had been as warranted. Plaintiff certainly could not run the engine with defective flues a whole season, and then claim that he was entitled, without any expense to himself, to have new flues put in his engine to commence another season's work.

The most serious error arises from the claim of plaintiff that he was entitled to damages in the sum of $600, because the engine furnished was a coal burner instead of a straw burner. Defendant claimed that the machine furnished had the necessary attachments to make it both a coal and straw burner. Admitting,

however, that this machine was not a straw burner, it appears, by plaintiff's own testimony, that he ascertained within three days from the time he started this engine that it was no good as a straw burner. The plaintiff testified to great length in regard to the extra expense of burning coal over the burning of straw, and finally, apparently basing his evidence upon such difference in expense between the use of the two, he testified that the damage to him in receiving the coal burner, rather than a straw burner, was $600. At the same time, admitted that the selling price of the straw burner, at the time that he entered into this contract, would not exceed that of a coal burner over $100, and that testimony of all the other witnesses, called upon this point, would be that the straw burner would not cost more than $50 over the cost of the coal burner. Undoubtedly the plaintiff would be entitled if he was to receive a straw burner and was furnished a coal burner, to recover the excess of the value of the straw burner over the coal burner; but it must be recognized that it is the market value of the same which must control. If the plaintiff did not desire to keep the coal burner at the market value thereof, he should have refused to have retained the same. He had used this engine for five seasons up to the time of the trial in the lower court. He admits that the engine worked fine. He makes some complaint about its using more coal than it ought to; but it would be impossible from the testimony to determine whether this statement was true or not. If the plaintiff in this case be given the right to recover the difference in the values of the two classes of engines, and should be allowed to base his opinion of the value of this engine upon the question of amount of coal used, the court will take judicial notice that many other matters must necessarily enter into the estimate of value—such as the amount of time saved, if any, by the use of coal, the amount of help needed for running of a machine of one class over that of the other, which machine would run the steadier, the life of the two classes of engines, and numerous things absolutely impossible to determine accurately.

It was clearly wrong for the court to have allowed the plaintiff to go into the question of the expense of running the engine,

but should have confined him strictly to the difference in market value of the machine received from that of a straw burner, which, under the evidence, instead of being $600, could not have possibly exceeded $50 to $100. Moreover, when it stands admitted that a straw-burner engine will be worth $1,400, and it appears that the engine received in this case has performed good work for six years, and nothing to show but that it will continue to perform good work as long or longer than a straw burner would, it is unconscionable for any person, after keeping and using this engine, to claim that he had been damaged in any such sum as $600 by its being worth that much less than a straw burner. As was well said in Lynch v. Curfman, 65 Minn. 170, 68 N. W. 5: "In view of the frequency with which we are confronted with what seems to us excessive verdicts for damages in cases involving the unlawful detention of. personal property, the breach of warranty on the sale of chattels, and the like, we deem it not improper to suggest to the learned trial judges of the state that juries should always be carefully instructed in such cases as to the rules that should govern them in arriving at the proper measure of damages." So in this case, while the trial judge laid down the correct rule—that damages must be limited to the difference in value between the straw-burner and the coal-burner engines—yet, in view of the evidence which he had received in this case, he should have cautioned the jury that they were controlled by the difference in value of these machines in the market, and could not take into consideration the evidence in relation to expense of running the machine.

The judgment of the trial court and the order denying a new trial are reversed.