BARNES, Administrator, Respondent, v. THOMPSON, Appellant.

(159 N. W. 899.)

(File No. 3757.　Opinion filed November 13, 1916.)

1. **Sales—Breach of Warranty—Heating Plant—Method of Installation—Degree of Heat Required—Repairs, as Affecting System of Installation—Damages, Measure of.**

Where, under a contract for installation of a hot water heating plant in a building owned by decedent, the plant to be installed was specified as Honeywell Hot Water Plant, the material to be used being fully specified in the contract, and the contract contained a guaranty that the plant was to be capable of heating the rooms in which radiators were placed to 70 degrees. and decedent's administrator alleging damages

for repairs and alterations necessary to make it comply with the waranty, the defects so remedied being in the method of installation only, and that the heating system itself was wholly inefficient and could not be made to comply with the warranty by suggested changes in the sizes and placing of hot water pipes, held, that decedent had a right to make such repairs and changes in installing as were necessary to make it efficient, to the extent even of changing to another system of installation; the efficiency of the plant as a whole regardless of any system or theory of installation, being the substance of the warranty; and the amount necessarily expended to accomplish this result would measure plaintiff's damages.

2.  Same—Warranty of Heating Plant, Breach of—Better System of Construction, Evidence of, Whether Sufficient.

Under a contract for installation of a hot water heating plant, containing a warranty that the plant would be capable of heating rooms in which radiators were placed to 70 degrees, held, that he for whose decedent the plant was installed could not recover damages under the warranty, upon evidence merely tending to prove that there existed a better system for construction of a hot water plant than the one installed by defendant. Held, further, that the evidence relating to methods of installation was merely incidental to the questions, first: whether the plant as constructed would heat the building properly, and if not, whether it could be so changed as to do so, and second: if it did not heat it, and could not be made to do so, what change in method or system was necessary to accomplish that end.

3.  Same—Warranty of Heating Plant—Degree of Heat Required—Instructions.

Where, in a suit for damages for breach of warranty under a contract for installation of a hot water heating plant, containing a guaranty that the completed plant would be "capable of heating the room in which radiators were placed to 70 degrees," the trial court refuses to instruct that said warranty meant a temperature of 70 degrees, "on the average during the months that the plant would be in actual use for heating purposes, that is, the average temperature of the weather at Wolsey, during the time this plant would be in use during the entire year for heating purposes," and where the weather reports in evidence showed such average outside temperature would be about 28 degrees above zero between October 1st, and May 1st, and the assistant weather observer in the bureau at Huron established in 1881 testified that on January 12, 1912, the temperature was 43 degrees below, and 23 below on the 15th, and was 43 degrees below on January 8, 1887, and had been 40 degrees below or lower only three times; that on December

31, 1911, it was 17 below, but the average for that month was 20.2 above, and the coldest in November of that year was 6 below, that from October 1, to May 1, the average temperature was 28 degrees above; that the average temperature did not get below 30 degrees more than twice during the winter, **held,** that the refusal of such instruction was not error.

4.  **Same—Warranty of Heating Plant—Degree of Temperature— Construction of Contract—Statute.**

In construing a contract for installation of a hot water heating plant, containing a guaranty that the plant would "be capable of heating the rooms in which radiators are placed to 70 degrees," **held,** construing Civ. Code, Sec. 1252, providing that a contract must receive an interpretation making it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties, the intention of both parties to said contract must be presumed to have been the construction of a heating plant which would meet the ordinary necessities of human habitation; that this intention contemplated a habitable temperature of not less than 70 degrees; that, under the evidence, and common experience in these latitudes, a heating plant capable only of producing a heating plant of 70 degrees in rooms in which radiators are placed when the outside temperature is 28 degrees above zero, would not be sufficient to heat rooms to a habitable temperature, during the larger part of the winter seasons.  But on the other hand, to assume that the parties contemplated extremes of outside temperature such as might only occur two or three times in a period of thirty years would be unreasonable; while it would not be unreasonable to assume that the parties contemplated the average of extreme low temperature actually occurring during long periods.  **Held,** further, that an instruction that said language in the contract bound defendant to furnish a heating plant capable of heating the rooms in which radiators were placed to 70 degrees during any weather that might be expected at Wolsey, did not cover this interpretation of the contract, and was misleading and prejudicial, especially in view of the fact that it was not attempted to be shown on trial that the plant was capable of producing a temperature of 70 degrees with the outside temperature of 40 or 43 degrees below zero, which the evidence showed had occurred on three occasions during some thirty years; that said instruction in effect told the jury that the warranty covered any outside temperature that might be reasonably expected at Wolsey, and thereunder the jury must have concluded that the court meant to instruct that the warranty required a plant capable of heating the rooms to a temperature of 70 degrees with an outside temperature of 40 or 43 degrees below zero;

and, so understood, the instruction was misleading, erroneous and prejudicial.

Appeal from Circuit Court, Beadle County. Hon. ALVA E. TAYLOR, Judge.

Action by Harry E. Barnes, as administrator, substituted as plaintiff for Ambrose Barnes, deceased, against Arthur L. Thompson, to recover damages for breach of warranty in installation of a heating plant. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed and remanded.

*A. W. Wilmarth,* for Appellant.

*W. W. Howes,* and *Chamberlain & Hall,* for Respondent.

(1) To point one of the opinion, Respondent cited: Klaveness v. Freese, (S. D.) 145 N. W. 561; Hohn v. Bidwell, 27 S. D. 249, 130 N. W. 837; Ugland v. Farmers Bank, (N. D.) 137 N. W. 572; 35 Cyc. "Sales" p. 474; Bixby v. Denison Normal School Assoc. (Iowa) 78 N. W. 234; Williams v. Thrall (Wis.) 76 N. W. 599; Aultman Co. v. Ferguson, 8 S. D. 463, 66 N. W. 1081; Cavanagh v. A. W. Stevens Co., (S. D.) 123 N. W. 681.

(2) To point two of the opinion, Appellant cited: Warder v. Fisher, 48 Wis. 341; 2d Ed., Vol. 14, Am. & Eng. Ency. of Law, 1144; 2d Ed., Vol. 24, Am. & Eng. Ency. of Law, 1160; Aultman & Co. v. Ferguson, 8 S. D. 458; C. Aultman & Co. v. Ginn, 48 N. W. 316 (N. D.).

SMITH, J. The plaintiff, A. B. Barnes, died pending the action, and Harry E. Barnes, administrator of his estate, was substituted as plaintiff. In 1911 the decedent contracted with defendant, Thompson, for the installation of a hot-water heating plant in a building owned by decedent in the city of Wolsey. The plant to be installed was specified as a "Honeywell hot water plant," and the material to be used in installation was fully specified in the written contract. The contract contained the following guaranty:

"When the apparatus herein proposed is complete, I guarantee it to be capable of heating the rooms in which radiators are placed to 70 degrees, and that all the materials used in the construction are the best of their respective kinds."

The contract price was $975, and was fully paid before this action was commenced. The action was to recover damages for

breach of the above warranty. No attempt was made to prove defects in the material used in the installation, and it is conceded that the heating plant itself was of the kind specified in the contract.

The breach of the contract alleged in the complaint and relied upon at the trial is that the plant failed to heat the building according to the warranty. Plaintiff alleges that he was damaged in the sum of $375 for repairs and alterations in the plant necessary to make it comply with the warranty. The defects claimed to have been remedied were in the method of installation only. It was claimed by plaintiff, and sought to be proved at the trial, that the failure of the plant to furnish the required degree of heat was due to the use of an old or obsolete and improper system of piping the hot water from the boilers to the radiators, and that an entire change to a new system of piping was necessary, and was put in by plaintiff at a cost of $394. It was defendant's contention at the trial that changes only in the sizes and placing of certain of the hot water pipes would have remedied the alleged defects, which changes could have been made at a cost of approximately $125. Numerous assignments of error in the record relate to rulings of the trial court in admitting and excluding evidence. Most of them involve propositions which are pertinent to and disposed of in connection with alleged errors hereafter noticed in giving and refusing instructions to the jury.

[1] Appellant's main contention, in connection with other rulings, is that his contract called for a certain specific system of installation, known as "the Honeywell system"; that he concededly installed that system, and that no evidence of damages was competent, except such as would tend to prove the cost of making such changes as would render that system effective under the warranty. Defendant's evidence as to the cost of necessary changes in the plant was based upon that theory of the case. On the other hand, it was plaintiff's and is respondent's contention that the Honeywell system itself was wholly inefficient, and could not be made to comply with the warranty by the suggested changes in the sizes and placing of hot-water pipes, and that he had the right to make such repairs and changes in the installation as were necessary to make it efficient, to the extent even of changing to another system of installation.

We think respondent is correct. The efficiency of the plant as a whole, regardless of any system or theory of installation, was the substance of the warranty. It was the system of installation itself, along with the boilers or heating apparatus, which was warranted. If the system was inefficient, the plaintiff had the right to make such changes, and only such changes, as were necessary to make it efficient to comply with the warranty. The amount necessarily expended to accomplish this result would measure plaintiff's damages.

"If the defect constituting the breach of warranty is capable of being remedied, the measure of damages may be the expense of remedying the defect." 35 Cyc. 474 (B), and authorities cited; Cavanaugh v. Stevens Co., 24 S. D. 349, 123 N. W. 681.

This evidently was the theory of the law upon which the action was tried; and to which the evidence was directed. We find no prejudicial error in the rulings of the trial court admitting or rejecting evidence over proper objections, and deem it unnecessary to review or discuss such assignments further.

[2] Appellant is correct in his contention that plaintiff could not recover damages under this warranty, upon evidence merely tending to prove that there existed a better system for the construction of a hot-water plant than the one installed by defendant. But the evidence relating to the different methods of installation was merely incidental to the questions: First, whether the plant as constructed by defendant would heat the building properly, and, if not, whether it could be so changed as to do so; and, second, if it did not heat it, and could not be made to do so, what change in the method or system was necessary to accomplish that end? The assignments of error which are mainly relied upon by appellant relate to the giving and refusal of certain instructions interpreting the language of the warranty that the plant would "be capable of heating the rooms in which radiators are placed to 70 degrees."

[3] Appellant's proposed instructions which were refused, interpret this language to mean a temperature of 70 degrees— "on the average during the months that the plant would be in actual use for heating purposes; that is, the average temperature of the weather at Wolsey during the time this plant would be in use during an entire year for heating purposes."

As shown by weather reports offered in evidence, such average outside temperature would be about 28 degrees above zero between October 1st and May 1st. The trial court instructed the jury that this language in the contract bound the defendant to furnish—

"a heating plant capable of heating the rooms in which radiators were placed to 70 degrees during any weather that might be reasonably expected at Wolsey."

Charles Hackathorn, whether as a witness for plaintiff or defendant does not appear, without objection testified that he was assistant observer in the Weather Bureau at Huron, which was established in 1881; that on January 12, 1912, the temperature was 43 degrees below, and 23 below on the 15th, and was 43 degrees below on January 8, 1887, and had been 40 degrees or lower only three times; that on December 31, 1911, it was 17 below, but the average for that month was 20.2 degrees above, and the coldest in November that year was 6 below on the 12th; that from October 1st to May 1st the average temperature was 28 degrees above; that on the average the temperature did not get below 30 degrees more than twice during the winter.

[4] We are satisfied the trial court did not err in refusing appellant's proposed instruction.

"A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Civ. Code, § 1252.

The intention of both parties to this contract must be presumed to have been the construction of a heating plant which would meet the ordinary necessities of human habitation. This intention plainly contemplated a habitable temperature of not less than 70 degrees. The evidence shows, and common experience in these latitudes proves, that a heating plant capable only of producing a temperature of 70 degrees in rooms in which radiators are placed when the outside temperature is 28 degrees above zero would not be sufficient to heat rooms to a habitable temperature during a large part of the winter seasons. It would follow that appellant's interpretation of this warranty would not be reasonable, in view of the intention of the parties, as evidenced by the purposes for which the heating plant was to be installed.

On the other hand, it would not be reasonable to assume that the parties contemplated extremes of outside temperature such as might only occur or have occurred two or three times within a period of 30 years as shown by the evidence. It, however, would not be unreasonable to assume that the parties contemplated the average of extreme low temperatures actually occurring during long periods. The record in this case, however, is silent as to what such average low temperature may have been.

The instruction given by the trial court did not cover this interpretation of the contract, and we think was misleading and prejudicial. The effect of the instruction as given, on the minds of the jury, must be considered in connection with the evidence actually before them. It had not been claimed or attempted to be shown at the trial that this plant was capable of producing a temperature of 70 degrees with an outside temperature of 40 or 43 degrees below, which the evidence showed had occurred on three occasions. The trial court instructed the jury in effect that the warranty covered any outside temperature that might be reasonably expected at Wolsey. Clearly the jury must have concluded that an extreme temperature which was shown to have occurred at least thrice, and at least once during the year preceding the contract, might reasonably be expected to occur again, and therefore that the court meant to instruct them that the warranty required a plant which would heat the rooms to a temperature of 70 degrees with an outside temperature of 40 or 43 degrees below zero. So understood, the instruction was misleading and erroneous, and must have been prejudicial to appellant's rights.

The judgment and order are reversed, and the cause remanded for a new trial.