## CONKLIN v. BEDELL MANUFACTURING CORPORATION.

[No. 13,103. Filed July 20, 1928.]

*James W. Noel, Hubert Hickam, Alan W. Boyd, Robert D. Armstrong* and *Meade S. Hays,* for appellant. *Condo & Batton,* for appellee.

NICHOLS, C. J.—Action by appellant to recover the purchase price of lumber sold, shipped and delivered to appellee, for which appellee refused to pay.

The first paragraph of complaint alleges that, on or about October 6, 1920, appellant and appellee entered into a contract for the purchase of lumber, whereby appellant agreed to ship to appellee at Marion, Indiana, a carload of oak lumber of the brand known as "4/4 No. 2 Common and Better Plain Oak," and appellee agreed to pay therefor the sum of $55 per thousand feet, less freight, within sixty days from date of invoice; that

certain letters and written orders evidencing said contract were exchanged between appellant and appellee; that appellant on November 11, 1920, shipped by freight and delivered to appellee at Marion, F. O. B. cars, one car containing the amount of lumber purchased, of the description provided by the contract, and on said day sent to appellee an invoice for said shipment in the amount of $810.37, with due credit for the freight in the amount of $238.22; that appellant had performed all things on his part to be performed under the terms of said contract, but appellee has at all times refused and failed to pay the purchase price of said lumber, or any part thereof, and that $571.15 has been due appellant from appellee for said lumber from and after January 11, 1921. The second paragraph of complaint is substantially the same as the first, except that the orders and letters which are alleged in the first paragraph to have evidenced the contract are alleged in the second paragraph to constitute the contract. The third paragraph alleges that appellee is indebted to appellant in the amount of $571 for goods sold and delivered at appellee's special instance and request, on or about November 11, 1920.

After issues were formed upon the complaint, and upon appellee's counter-claim by which appellee sought a recovery for freight paid, and for storage, trial was had by the court without the intervention of a jury, and on May 2, 1927, the court entered a finding that appellant take nothing by reason of his cause of action, and that appellee recover of appellant on its counter-claim for freight paid in the amount of $238.22. After appellant's motion for a new trial was overruled, the court rendered judgment on the finding, from which this appeal. The error relied upon for reversal is that the court erred in overruling appellant's motion for a new trial, under which appellant presents that the decision of the

court is not sustained by sufficient evidence, and that it is contrary to law.

It appears by the undisputed evidence that, prior to the exchange of orders and letters between appellant and appellee, appellant's employee, Binford, had solicited appellee through its president, Bedell, for an order for a carload of lumber at a fixed price for each grade of lumber, but appellee's president preferred to buy at an average price for all grades in the car. After Binford's return to Indianapolis, he had a telephone conversation with Bedell, and agreed to sell appellee "No. 2 Common and Better" at an average price of $55 per thousand delivered at Marion, Indiana. Thereupon, Binford mailed to appellee an acknowledgment of appellee's order for one car "4/4 No. 2 Common and Better" plain oak at $55 per thousand. On the same day, appellee mailed to appellant a purchase order for one carload of "4/4 plain oak No. 2 Common and Better" tie siding at $55 per thousand feet which order contained a provision that "The above stock is guaranteed to be as follows: ⅔ car of 8½ lengths, ⅓ car 10', 12' and 14' lengths, 20% No. 2 common, 20% FAS (FIRSTS AND SECONDS), 20% No. 1 common." Immediately upon receipt of this order, appellant wrote to appellee a letter stating appellant's purchase order was in accord with the telephone conversation between Bedell and Binford, but that the order indicated a misunderstanding in referring to a guaranty; that it had been explained to appellee that about one-third of the stock would be tie edging, and the balance would run largely to 10, 12 and 14 foot lengths; that the stock would probably run 10 to 15% first and seconds, and about equal parts "No. 1 and No. 2 common" with perhaps a little more "No. 2 common," and would be the same percentages; that it was because of the fact that appellant would not guarantee any certain percentage of each grade that he preferred to sell it at a

fixed price for each grade, but that appellee had preferred to buy it as a straight car of "No. 2 common and better." Appellee wrote in reply that appellant's statements were correct, and authorized the placing of the order in accordance therewith.

It appears by the undisputed evidence that appellant shipped to appellee, at Marion, Indiana, a carload of lumber containing 14,181 feet of No. 2 common and better plain oak. According to appellee's classification, this lumber consists of 10,267 feet of No. 2 common and 3,914 feet of No. 1 common, which is a better grade than No. 2 common. There were no FAS, which means first and seconds, being the best grade and the second-best grade of lumber, and better than "No. 1 and No. 2 common." There were 445 feet of culls, for which appellant makes no claim for compensation. Appellee paid the freight, but, upon inspection when unloading, refused to accept the lumber.

It is clear that by the express terms of the contract, the car of lumber was to consist of "No. 2 common and better." There was no specification therein that it should contain any "FAS," nor as to the percentage of "No. 2 and No. 1 common" that it should contain. It is true that by the evidence it did not contain the percentage of each of these grades that appellant said that it probably would contain, and that it did not contain any "FAS," as appellant said that it probably would contain, but appellant expressly declined to make any guaranty as to these probable estimates, saying in his letter before the order was finally placed that, "It was because of the fact that we are not in position to guarantee any certain percentage of each grade until the stock is loaded out that we preferred to sell it at a certain price for each grade. However, Mr. Bedell stated that he would prefer to buy it as a straight car of 'No. 2 Common and Better.'" In reply, appellee admitted that

this was a correct statement. It thus appears that appellant expressly declined to make any guaranty, and there was no warranty in the contract as to the percentage of each grade that the car should contain, nor that it should contain any first and seconds. There is no issue of fraud presented, and no contention that appellant was guilty of any fraudulent act.

Under such circumstances, the rule, as stated in 1 Williston, Sales §213, to the effect that, where the seller makes statements in regard to his goods, ██ but refuses to warrant the truth of his statements, though the statements by themselves might be sufficient to constitute a warranty, the refusal not only indicates an unwillingness to contract for the truth of the statements, but also should put the buyer on his guard, and that he would not be justified in buying in reliance upon them, must prevail. As sustaining this rule, see *Lynch* v. *Curfman* (1896), 65 Minn. 170, 68 N. W. 5; *Machine Company* v. *McClamrock* (1910), 152 N. C. 405, 67 S. E. 991. As we view this case, under the undisputed evidence, the court erred in its finding in favor of appellee. The judgment is reversed, with instructions to grant a new trial.

Dausman, J., absent.