## BROOKS and ALCOTT vs. AVERY and others.

In a negotiation for the sale of land, the seller is willing to take $10,000 in cash, but the person proposing to buy, being unable to pay cash, it is agreed that a deed, and a bond and mortgage for $12,000, payable at a future time with interest, shall be executed, to remain in the seller's hands until he can negotiate the sale of the bond and mortgage for a sum equal to the price he asks in cash for the land, and the deed then to be delivered.   The papers are executed accordingly, the bond and mortgage afterwards sold for $10,000 cash, and the deed delivered at the same time.   This transaction is not usurious, and the bond and mortgage are a valid security for the sum of $12,000.

Such a transaction, it seems, does not differ from the ordinary case of asking one price in cash for the property, and a higher price on credit, with the further con-

dition that the sale is not to be effectual until the security taken for the credit price can be sold for a sum of money equal to cash price.

[226] A purchaser of land encumbered by an usurious mortgage, may set up the usury in defence to a.bill of foreclosure, unless by the terms of the purchase, he took the equity of redemption merely, subject to the payment of the mortgage.

BILL filed to foreclose a mortgage, dated September 25, 1840, executed by Daniel Samain to Henry B. Williams, for the sum of $12,000, payable by installments, with semi-annual interest, and covering a farm in the county of Monroe. The mortgage was assigned by Williams, on the 22d of February, 1841, to Fletcher M. Haight, from whom, through sundry mesne assignments, the plaintiffs became the holders before the commencement of the suit. Samain, on the 1st of December, 1843, conveyed the premises.by quit-claim deed, to the defendant, Elias Avery, who defended on the ground of usury. The case was brought to a hearing on pleadings and proofs, before the vice chancellor of the eighth circuit, who overruled the defence and granted a decree of foreclosure, and for the sale of the mortgaged premises. His decree was afterwards affirmed by the supreme court in the seventh district, and Avery appealed to this court. A sufficient statement of the case to show the grounds of decision in this court, will be found in the opinion of JEWETT, J.

*O. Hastings,* for appellants:

*N. Hill. Jr.* for respondent.

JEWETT, J. This defence goes upon the assumption, that Williams, although legally the owner of the mortgaged premises in fee, held them in fact, only as a means of reimbursing himself the amount which he had previously advanced as a temporary loan for the benefit of Avery, and that Samain purchased the premises of Williams for the amount of such loan, (being about $10,000,) and made the bond and mortgage in question, conditioned for the payment of $12,000, with interest, for the purpose of being sold in market by Williams as his agent,

at the best price he could obtain, not less than $10,000, for the purpose of obtaining that sum in hand to pay his debt thus contracted to Williams. And having been sold and as- [227] signed by his agent Williams to Haight, for such purpose, at a discount of about $2000, over and above the legal rate of interest, the bond and mortgage were usurious and therefore void.

If the facts in the case authorized such a supposition, no one would doubt, I apprehend, but that the defence of usury could well be set up and sustained. But the facts in the case are neither so set up by the answer, nor proved by the evidence. There is nothing in the answer to show that Williams held the mortgaged premises as a means of reimbursing himself the amount of any loan that he had previously made for the benefit of Avery, or that he had at any time made any loan whatever. On the contrary, the answer fully admits that previous to, and on the 25th day of September, 1840, Williams was the owner in fee of the premises, and being so, proposed to sell them to Samain for such sum as should be equal to the amount which they had cost him ; and upon these terms the answer asserts that Williams agreed to sell, and Samain agreed to purchase the premises. It then proceeds to say that inasmuch as Samain had not the means of paying that sum to Williams, it was further agreed between the parties that Williams should execute to Samain a conveyance in fee of the premises, and that Samain should execute to Williams a bond and mortgage upon the premises, nominally, to secure the payment of $12,000, with interest, at the expiration of certain times as therein specified; and that Williams should sell the bond and mortgage for the best price he could get for them, so that by means thereof, Williams should raise such sum as he so proposed to sell said premises to Samain for, and that until Williams should effect such sale of the bond and mortgage, the conveyance to Samain should not be delivered to him, but remain in the hands of Williams. The answer further states that such conveyance, bond and mortgage were so executed, and for those purposes, on the 25th of September, 1840; and that the same remained in the hands of Williams, pursuant to such agreement, until the 22d day of

February, 1841; that in the mean time, Williams had made [228] several unsuccessful efforts to sell said bond and mortgage, when on that day Williams made a corrupt and usurious agreement with Fletcher M. Haight, by which Williams was to assign the bond and mortgage to Haight, in consideration of which, Haight was to pay a note which Williams had previously made to the Rochester City Bank, for $10,000, and upon this agreement Williams made the assignment and Haight paid said note; that at the time of concluding the agreement between Williams and Haight, Williams and wife acknowledged and delivered the conveyance to Samain.

Now the answer, as I have before remarked, does not assert that Williams ever made any loan, or that he held the premises as security to reimburse himself for any loan or advance of money previously made by him to any one; nor does it aver, looking at the whole answer together, that Samain ever contracted with Williams to purchase the premises, absolutely or conditionally, for the *sum* which the premises had cost Williams. But it is conceded by the answer, that he could not so contract, for the reason that he could not pay that sum in hand, and Williams would not sell for that sum upon a credit for any time. That the negotiation resulted in this, that if Williams could dispose of Samain's bond and mortgage, made for $12,000, with interest, for at least $10,000, Samain was to be the purchaser of the premises at $12,000, with interest upon the credit specified in the condition; and the contract between them was to remain and did remain inchoate, until it was ascertained by the subsequent efforts of Williams, whether he could obtain for such a bond and mortgage cash in hand, to the amount for which he was willing to sell the premises. When that was ascertained, on the 22d day of February, 1841, both parties by their acts consummated the negotiation of the 25th of September, by the acknowledgment and delivery of the deed on the part of Williams and his wife, and the acceptance thereof by Samain. Although it is true, that until the delivery and acceptance of the conveyance, the bond and mortgage had no vitality as a contract or obligation; they then had. The con-

veyance had the effect to vest the title to the premises in Samain, and the bond and mortgage became an obliga- [229] tory contract on the part of Samain, to pay Williams the sum of $12,000, with interest, for the premises.

The evidence, in my judgment, shows clearly that the upshot of the whole negotiation and contract was, that Williams would not sell unless the sale would produce him in hand $10,000, or thereabouts. But he would sell, upon a credit, for $12,000, upon condition that he could first ascertain that Samain's bond and mortgage for that sum, upon the credit specified, with interest, would sell for $10,000 cash in hand. That was ascertained, upon which the contract was consummated, and carried into effect. The transaction between Williams and Samain, so far from being tainted with usury, is shown to be nothing more than the ordinary case of an owner of property, desirous to sell, making a difference in price between a sale for cash in hand and a sale on time; with the further caution, not to sell absolutely, till he ascertains that the security proposed to be taken for the price on time, will sell for a sum in cash equal to the sum he is willing to sell for being paid cash in hand: a caution which the owner has a legal right to exercise, without being liable to have usury successfully imputed in the contract.

The defendant, Avery, being a purchaser of the mortgaged premises generally, from Samain, the mortgagor, and not of the equity of redemption merely, might set up the defence of usury against the mortgage. (*Post* v. *Dart,* 8 *Paige,* 639 *; Shufelt* v. *Shufelt,* 9 *id.* 137; *Ord on Usury,* 131.)

The bond and mortgage being valid securities in the hands of Williams, the purchase by Haight at a sum less than the amount for which they were given, does not constitute usury. (*Cram.* v. *Hendrick,* 7 *Wend.* 569 ; *Rapelye* v. *Anderson,* 4 *Hill,* 472.)

I think the decree of the supreme court should be affirmed.

Decree affirmed.