J. H. BURNETT, Appellant, v. HOWARD HENSLEY, Appellee.

Action on Implied Warranty and for Fraud: EVIDENCE. At an
1   auction sale of mares where there is no evidence that the seller
    knew the purpose for which plaintiff was buying, and the
    animal is subject to inspection and plaintiff relies on his own
    judgment, there is no implied warranty of the animal for any
    specific purpose.

Same: FRAUD: DISCOVERABLE DEFECT: EVIDENCE. Where the
2   knowledge of a defect in the animal is open to the purchaser,
    there is no fraud to be inferred from the silence of the seller.
    Evidence considered and found not to constitute fraud.

Same: MISREPRESENTATIONS. Evidence considered and no mis-
3   representations found amounting to fraud.

Same: EVIDENCE: DIRECTED VERDICT. On the whole evidence in
4   the case the trial court was right in directing a verdict for the
    defendant.

*Appeal from Taylor District Court.*—HON. H. M. TOWNER,
Judge.

FRIDAY, DECEMBER 19, 1902.

ACTION at law for breach of an implied warranty and
fraud in the sale of a mare. Trial to a jury. Directed
verdict for defendant, and plaintiff appeals.—*Affirmed.*

*Charles Thomas* for appellant.

*Wm. Miller* and *F. L. Arthaud* for appellee.

DEEMER, J.—Plaintiff claims that he purchased the
animal of defendant at a public sale; that defendant rep-
resented her to be an imported Percheron, suitable for
breeding purposes; that he (plaintiff) was desirous of
purchasing such an animal, and attended the sale, and
purchased her for that purpose; that in truth the mare

was diseased when he bought her, was wholly unfit for breeding purposes, and of no value whatever; that the disease of the animal was fraudulently concealed from him by the removal of all outward evidence thereof; that defendant knew plaintiff was purchasing the animal for breeding purposes, and that with such knowledge he fraudulently concealed her true condition from him. Averment is made of an offer to return the animal, and tender of her is made to the defendant in the petition. The case is argued as if both fraud and implied warranty are in issue, and we will so treat it in this opinion. At the close of all the evidence defendant moved for a verdict, and his motion was sustained. We are therefore to decide whether there was enough evidence of either fraud or implied warranty to take the case to the jury for its verdict.

Defendant advertised a sale of "four head of thoroughbred Percheron mares, one twelve years old, and three coming four years old." The animal in question bore the name of "Amy," and at the time of the sale defendant caused the auctioneer conducting that sale to announce that "the future usefulness of the mares was not warranted." When the mare "Amy" was put up, the auctioneer made the following additional announcement: "She has raised seven colts in eight years. Last year she failed to get in foal, and this year she was not bred." She was led around to display her action, and the auctioneer said, while the bidding was in progress that "a man buying her at that price [$60 or $65] would be making money or profit if he got one colt from her." Plaintiff bought her without asking any questions. After plaintiff had taken her to his home, and within a few days thereafter, he discovered that her genital organs were diseased, and that corruption was passing from them. He testified that he purchased her for a brood mare, and that in the condition she was in "she was not worth a dollar." There is evidence that defendant knew at the time of the sale

that there was some defect in the animal, but he claimed that he made no warranty, and was guilty of no deceit in the sale.   One of the witnesses, who was a breeder of horses, testified that he was at the sale, but did not notice any defect in the animal, but that the defects were such that any one could find them, and that expert knowledge was not required to make the examination; that the mare had no womb, and that the defect was apparently of long standing.   Another of plaintiff's witnesses, who was at the sale, testified that he knew there was some defect in the mare, but that he did not notice any defect in her at the time of the sale.   A short time before the sale defendant had taken the animal to a veterinary surgeon for treatment, and was told by the doctor when he brought her back that she was all right.   Defendant knew, of course, that something was the matter with her when he took her to this surgeon, but after her return she appeared all right. Defendant did not state at the time of the sale that the mare had been doctored, nor that she was diseased, nor was he asked any questions about the matter.   Defendant did not know that plaintiff was buying the animal for a brood mare, except as his knowledge should be inferred from what we have said as to the evidence.

We have, then, to inquire, first, whether or not, on this state of facts, an implied warranty of the breeding qualities of the mare might have been found by the jury.

1. IMPLIED warranty: evidence.   There are at least two reasons why a verdict for plaintiff on this issue could not have been sustained.   Quoting from Benjamin on Sales, we said in *Blackmore v. Fairbanks, Morse & Co.*, 79 Iowa, 289:  "So far as an ascertained specific chattel already existing, and which the buyer has inspected, is concerned, the rule of *caveat emptor* admits of no exception by implied warranty of quality.   But where a chattel is to be made or supplied to the order of the purchaser, there is an implied warranty

that it is reasonably fit for the purpose for which it is used ordinarily, or that it is fit for the special purpose intended by the buyer, if that purpose be communicated to the vendor when the order is given." That case was followed in *Alpha Checkrower Co. v. Bradley*, 105 Iowa, 537. See also, *McClung v. Kelley*, 21 Iowa, 508. The rule has ample support in authority. *Hart v. Wright*, 17 Wend. 267; *Hadley v. Clinton County Importing Co.*, 13 Ohio St. 502, 82 Am. Dec. 454; *Scott v. Renick*, 1 B. Mon. 63, 35 Am. Dec. 177; *Bartlett v. Hoppock*, 34 N. Y. 118, 88 Am. Dec. 428; *Kohl v. Lindley*, 39 Ill. 195, 89 Am. Dec. 294; *Deming v. Foster*, 42 N. H. 165; *McQuaid v. Ross*, 22 L. R. A. 187, and cases cited in note (s. c. [Wis.] 55 N. W. Rep. 705, 39 Am. St. Rep. 864).

In this case there is no evidence that defendant knew of the purpose for which plaintiff was buying the animal, and it clearly appears that plaintiff had opportunity for inspection, and, so far as shown, relied on his own judgment, except as we shall hereafter note. No warranty will be implied from the statement that the animals were "thoroughbred." This was simply a descriptive term. *Shambaugh v. Current*, 111 Iowa, 121. Moreover, the defendant expressly stated at the time the sale was opened that the future usefulness of the mares was not warranted. This clearly negatives the thought of an implied warranty.

Was there any fraud in the sale? Even if no warranty may be implied, it was, nevertheless, the duty of defendant, when he undertook to speak with reference to the animal, to tell the truth regarding her condition and prior experiences. Fraud will prevent the application of the maxim *caveat emptor* even as to executed sales. *McClung v. Kelley*, and *Hadley v. Clinton County Importing Co.*, *supra*. Fraudulent concealment is akin to fraudulent representations, and a half truth may be as deceptive as a falsehood. If there be a latent defect, not ascertainable on

2. SAME: fraud: discoverable defect: evidence.

inspection, of which the seller had knowledge, common honesty requires that he tell the purchaser of the defect. But if knowledge of this defect be open to the purchaser, no fraud is perpetrated by the seller in remaining silent. Should he, however, make statements regarding the condition of the thing sold with intent to divert the eye or to obscure the observation of the purchaser, he will be guilty of fraud, and the law will relieve the purchaser. *Chadsey v. Greene*, 24 Conn. 562; *McAdams v. Cates*, 24 Mo. 223; *Jeffrey v. Bigelow*, 13 Wend. 518, 28 Am. Dec. 476; *Cornelius v. Molloy*, 7 Pa. 293; *Hull v. Kirkpatrick*, 4 Ind. 640; *Street v. Rider*, 14 Iowa, 506.

Even in such cases, in an action at law for damages, it must be shown that defendant knew of the defect, and that he made the statements or concealed the defects with intent to defraud the purchaser.  The exact complaint made in the petition is that defendant knew of the defects in the animal, and that he fraudulently concealed the evidence thereof, and removed all outward signs, so that her condition was not apparent to the observer.  It is also charged that plaintiff bought the animal for breeding purposes to defendant's knowledge; that defendant knew she was worthless for that purpose, or for any other, and concealed the facts from plaintiff for the purpose of cheating and defrauding him.  There is no evidence, as we have seen, that defendant knew of the purpose for which plaintiff wished to buy the mare, and, in view of the statement that defendant would not warrant, we are left simply to inquire whether defendant did or said anything which would in law be considered a fraud.  There is no evidence to support this contention.  At most it is a bare surmise, and, in view of the fact that defendant had but recently received her back from a veterinary surgeon, who stated that he believed she was cured, we are not disposed to even suspicion that defendant removed evidences of disease with intent to defraud and deceive.  Had he done so,

of course plaintiff would have been entitled to the verdict.
But we are not allowed to infer fraud from such a showing
as is here presented.

While there is no statement in the petition of affirma-
tive misrepresentation, counsel have argued the case on
that theory, and we are required to so consider it.  It is
3. SAME: mis-  said that defendant's statement that the ani-
representa-
tions.         mal had had seven colts in eight years, and
that she had not been bred the past season, was a half
truth, and in itself constituted a fraud.  The difficulty
with this conclusion, even if it be accepted as sound, is
that it is not based on sufficient facts.  That defendant
caused the auctioneer to make the statement is true, but
there is not a particle of evidence that plaintiff heard or
relied upon it.  He says that the auctioneer said, in his
presence, that a man buying her at $60 or $65 would make
a profit even if he got but one colt from her, but he also
testified that he did not ask any questions of defendant or
the auctioneer regarding the mare, and that all questions
he did ask regarding the animals being sold were fairly
answered.  Surely, plaintiff may not count on any repre-
sentations he did not hear or rely upon.  The statement
made by the auctioneer was clearly an opinion, a sort of
puffing in trade, which does not amount to fraud or mis-
representation.  Moreover, the statement, as made, was
true; and, in view of the fact that defendant was informed
by the veterinary who had been treating the mare that
she had recovered, there is no evidence of bad faith on his
part.  Indeed, the statement, taken in connection with the
fact that plaintiff caused it to be announced, when the sale
was commenced, that he would make no warranty, was,
when taken in connection with the age of the animal, such
as to put any prudent purchaser upon inquiry, and to lead
him to trust his own judgment in the matter, as we have
no doubt plaintiff did.

There is but a single doubtful question in the case, and that is, was there sufficient evidence to take the case to the jury on the proposition that defendant caused the mare to be cleaned up for the purpose of sale, and with the intent to defraud? As already suggested, this is but a mere surmise, not sustained by sufficient evidence. Moreover, there is no evidence that plaintiff relied upon her then apparent condition, or that he made any particular examination to discover defects. Again, it is shown by one of plaintiff's own witnesses that the defect was open to inspection, and that expert knowledge was not required to discover it. In *Dean v. Morey*, 33 Iowa, 120, relied upon by appellant, the horse was a "cribber." Defendant knew that fact, but failed to disclose it to the purchaser. The defect could have been discovered by looking into the animal's mouth. Plaintiff did not do so, because he said he never knew of an animal so young being a cribber. Held plaintiff could not recover. In that case we said: "If the vendor practices any artifices to conceal defects, or makes any representations to throw the buyer off his guard, or where there is a latent defect known to the seller, which the exercise of ordinary and reasonable caution on the part of the buyer would not likely discover, the vendor is liable." And so we say here. But in the instant case there were no representations of which plaintiff may complain, and no sufficient evidence of any artifice to conceal defects. After the animal was brought back from the veterinary surgeon, and defendant was told that she was cured, the means for observation as to her condition seem to have been as available to plaintiff as to defendant. As we find no artifice was used, and the defendant acted apparently in the best of faith, it is a case of "let the purchaser beware."

The trial court was right in directing a verdict, and its judgment is AFFIRMED.

4. SAME: evidence: directed verdict.