THE BRIDGEPORT L. A. W. CORPORATION *vs.* LOUIS LEVY ET AL.

Third Judicial District, New Haven, June Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued June 4th—decided November 25th, 1929.

*Raphael Korff*, with whom was *Harry Kursman*, for the appellant (defendant Levy).

*Clarence R. Hall*, with whom, on the brief, was *Frederick E. Morgan*, for the appellee (plaintiff).

HAINES, J. It is disclosed by the record that the defendant Levy on October 27th, 1927, bought an automobile from The Paige Connecticut Corporation upon a so-called conditional sale contract, by the terms of which the title to the automobile was to remain in the seller or its assigns until full payment had been made by the buyer. The first payment was made by turning in a car owned by the buyer at the agreed price of $900, the remaining payments, amounting to $916.35, to be made monthly in cash. The seller included in the $916.35 a so-called "Settlement Charge" of $121.35, but the record does not fully disclose what it represented or why it was added. The note upon which this action was brought was made a part of the conditional

sale contract. The same day the contract was signed, the seller assigned it, with the note, to the plaintiff herein, The Bridgeport L. A. W. Corporation, without recourse.

The automobile was delivered to the buyer the same day, but eighteen days thereafter, while being driven by the wife of the buyer, the car was wrecked in an accident. It was the claim of the buyer, that the sole cause of the accident was a defect in the construction of the steering wheel which was not properly fitted together and was not as strong as it was intended to be, which could not have been discovered on inspection at the time of purchase. The buyer's wife was severely injured in this accident, which occurred November 14th, 1927. A few days after the accident, upon discovery of the claimed defect in the steering wheel, the buyer returned the car to the seller, The Paige Connecticut Corporation, and demanded a return of the amount he had paid thereon, but the demand was refused, though the corporation accepted the car. It does not appear that any further action was taken by the parties toward an adjustment of their claims until this action was brought in February, 1928. On May 7th, 1928, the present plaintiff sent the defendant Levy the following letter: "We have today authorized Paige Connecticut Corporation to sell your Paige 6-65 Sedan, Serial ♯ 169179, Motor ♯ 170048. We estimate the value of your car to be about $1,000 at the present time. It will be necessary for us to reimburse the Paige Connecticut Corporation for the amount of repair bill and charges, and the balance will be applied to your account." It appears from Exhibit B, that the amount charged for these repairs was $519.80, but it does not appear whether they were made before or after the letter referred to, nor who actually made them, nor by whose authority it was done.

The first instalment on the note became due by its terms on November 27th, 1927, two weeks more or less after the wrecking of the car and its return to The Paige Connecticut Corporation by the buyer. Neither this nor any further instalments on the note have ever been paid by the buyer. The car remained in the possession of The Paige Connecticut Corporation until December, 1928, when it was sold by it for the net price, after payment of commission, of $715. The exact amount which remained for the credit of the account of the defendant Levy does not appear, but after the deduction of charges, including the repair bill of $519.80, it obviously must have been considerably less than $200.

On February 24th, 1928, The Bridgeport L. A. W. Corporation brought this action, claiming to recover $720.15 from the defendant Levy plus interest and attorney's fees. It appears from the officer's return on the writ, that by direction of the plaintiff's attorney, he attached the automobile "as the property of the within named defendant Louis Levy." The car was sold by The Paige Connecticut Corporation in December, 1928, during the pendency of this action, and judgment was rendered in the action under date of February 1st, 1929.

Upon the motion of the defendant Levy, The Paige Connecticut Corporation was made a party defendant, and by direction of the trial court was given a judgment for its costs.

Four assignments of error are based upon the rulings of the trial court excluding certain evidence offered by the defendant. These rulings do not appear in the record, and the claims are therefore not properly before us and cannot be considered. Rules of the Supreme Court, Practice Book, p. 307, § 6; *Welbrot* v. *Leven-*

*berg,* 98 Conn. 217, 224-227, 118 Atl. 911; *Callahan* v. *Jursek,* 100 Conn. 490, 492, 124 Atl. 31.

One of the defenses of the defendant Levy, was that the contract and note were usurious. The plaintiff demurred to this defense and the court sustained the demurrer, and this is assigned as error. The contention of the defendant is that the "Settlement Charge," which was the excess over the cash price of the automobile, was in the nature of interest, and when added to the "highest lawful rate of interest," which the note bore, constituted an unlawful and usurious charge in violation of our statutes against usury. General Statutes, Chap. 239. The court took the view that it was but a larger price for the machine fixed by the seller because the sale was on time and not for immediate cash. There is nothing in the record before us from which it can be conclusively determined as a fact, what the nature of the charge was, why it was made, of what it consisted, or upon what basis it was computed. In the absence of this information, we cannot assume it was an additional charge in the nature of interest. It is quite clear from the record that the court was also without definite information on this point, and its assumption was one of fact and unwarranted. Under these circumstances it cannot be said that the allegations demurred to presented a question of law and the demurrer should have been overruled.

Upon the premise that the "Settlement Charge" was not in the nature of interest, but was the excess of the credit price over the cash price of the automobile, the court was undoubtedly correct in holding the transaction was not usurious. It was the right of the seller to put that price upon the car for sale on credit, and if done in good faith, it was a matter between the parties themselves and a legitimate subject of contract. "A vendor may well fix upon his property one price for

cash and another for credit, and the mere fact that the credit price exceeds the cost price by a greater percentage than is permitted by the usury laws is a matter of concern to the parties but not to the courts, barring evidence of bad faith. If the parties have acted in good faith such a transaction is not a loan, and not usurious." 39 Cyc. p. 927, citing *Ellenbogen* v. *Griffey*, 55 Ark. 268, 18 S. W. 126; *Ozmore* v. *Coram*, 133 Ga. 250, 65 S. E. 448; *Primley* v. *Shirk*, 60 Ill. App. 312; *Casady* v. *Scallen*, 15 Iowa, 93; *Saxe* v. *Womack*, 64 Minn. 162, 66 N. W. 269; *Brooks* v. *Avery*, 4 N. Y. 225. If A offers to sell land to B for $10,000 in cash or for $20,000 payable in ten instalments, and B prefers to accept the second alternative in order to gain time, the contract is not usurious. Though it may then appear that B pays one hundred per cent for the forbearance so that the contract is usurious, such is not its true nature. "Such a contract has none of the characteristics of usury; it is not a loan of money." *Hogg* v. *Ruffner*, 66 U. S. (1 Black) 115, 119, 17 Law Ed. 38. Our statutes of usury make specific reference to money loans, direct or indirect, and a loan has been defined as "a contract whereby in substance one party transfers to the other a sum of money which that other agrees to repay absolutely together with such additional sums as may be agreed upon for its use." Usury is the taking of more interest for the use of money or forbearance of a debt than the law allows. 3 Parsons on Contracts (6th Ed.) p. 107. And "an usurious contract, is one which stipulates for the payment of more than lawful interest, for the use of money, or forbearance of a debt." 39 Cyc. p. 889.

In an early case in this State it was said: "It appears that the plaintiff claimed to be a purchaser of

the note. No facts are disclosed to show it was a pretended sale, and in substance a loan. . . . These principles will not be denied; that to constitute usury, there must be a loan, directly or indirectly; that a real sale, without any intent to loan, though it may be oppressive, cannot be usurious." *Lloyd* v. *Keach*, 2 Conn. 175, 177, 178. To the same effect is the language of a Massachusetts opinion: "While in a broad sense of the word the credit given for the price of goods sold may be called a loan, it is not a loan in the ordinary and usual sense of the word, and we think it is not a loan within the meaning of the statute. The language here used has reference primarily to money furnished to another to be repaid, and it is not intended to include credits given for goods sold upon which a mortgage is taken back by way of security." *Day* v. *Cohen*, 165 Mass. 304, 305, 43 N. E. 109.

The parties, however, must act in good faith, and where a contract appears as a sale but is in fact a mere cloak for an usurious loan, it will not be free from the taint of usury. *Collier* v. *Barr*, 64 Ala. 543; *Pope* v. *Marshall*, 78 Ga. 635; *Quackenbos* v. *Sayer*, 62 N. Y. 344; *Ferguson* v. *Sutphen*, 8 Ill. 547; *Montague* v. *Sewell*, 57 Md. 407.

Error is assigned for the failure of the trial court to charge as requested by the defendant Levy, that in the absence of a written authorization by the "owner or possessor" of the car the repair bill of $519.80 could not properly be charged to the defendant Levy, under the provisions of the Public Acts of 1925, Chapter 235. That Act reads as follows: "If any repairman or automobile mechanic shall receive any motor vehicle for the purpose of making repairs, he shall, before his charges upon the same shall exceed the sum of fifty dollars, obtain from the owner or possessor of such vehicle a written authority for any expenditure in

excess of said sum. No civil action shall be maintained for any such charges exceeding the sum of fifty dollars unless the same were authorized in writing as herein provided." The benefit of this statute accrues to the "owner" or "possessor" of an automobile where demand is made by a "repairman" or "automobile mechanic." By the terms of the assigned contract the legal title to the car in question was in The Bridgeport L. A. W. Corporation and the possession was in The Paige Connecticut Corporation. The defendant offered evidence to prove that The Paige Connecticut Corporation repaired the automobile without any written authorization from either the plaintiff or the defendant. Under these circumstances it was the right of the plaintiff as the holder of the legal title of the car at that time, to refuse to pay more than $50 for the repairs. Having paid the full bill, however, it will be presumed that the plaintiff waived the statutory requirement as it had a right to do. In an action by the plaintiff for reimbursement, this defendant cannot set up in defense the failure to give a written order. The demand is not here made by a repairman or an automobile mechanic. The statute has no application to the present situation and there was no error in the refusal of the court to charge as requested.

It is also claimed as error that the court read verbatim to the jury the plaintiff's requests to charge. The record shows there were numerous requests to charge made by both parties. These were read to the jury seriatim, and commented upon by the court. Such a course is seldom if ever justified, and in this case could hardly have failed to confuse and mystify rather than enlighten the jury as to the law of the case. They were entitled to a clear and succinct statement from the court of the legal principles which should guide them to their decision with clear application to

the issues. *Rosenstein* v. *Fair Haven & W. R. Co.,* 78 Conn. 29, 32, 60 Atl. 65; *Shailer* v. *Bullock,* 78 Conn. 65, 68, 61 Atl. 65; *McGarry* v. *Healey,* 78 Conn. 365, 367, 62 Atl. 671; *Warner* v. *McLay,* 92 Conn. 427, 430, 103 Atl. 671. In the absence however, of anything incorrect in law, the reading of requests in this manner, though improper, is not in itself reversible error, unless the jury were misled. *Stevens* v. *Kelley,* 66 Conn. 570, 578, 34 Atl. 502.

The defendant claimed to have proved by his evidence that the steering wheel of the car was defectively constructed and that the accident and resulting damage to the car was caused solely by this defect. He requested the court in substance to charge that this being a latent defect, not discoverable upon inspection, it rendered the car a substantially different one from that contracted for and constituted a failure of consideration for the contract; that he was therefore entitled by law to return the car and recover back what he had paid.

Instead of so charging, the court told the jury in effect that under the Connecticut law such a latent defect would not be a failure of consideration or a sufficient ground for rescinding the contract.

The difficulty with this question is the same as with several others presented by this record, viz.: that the facts have not been developed sufficiently to enable a final conclusion to be reached. There is nothing in the record of the evidence which defendant offered to show the character of this defect in the steering wheel except that it was not properly constructed of proper materials and "as a whole, the wheel as constructed was not as strong as it was intended to be." There seems to have been no evidence that the defect, if it existed, was a latent one not discoverable by the buyer upon inspection.

From the facts presented by the record it appears that the jury could have found there was a defective steering wheel which resulted in damage to the car of $519.80. The defendant's evidence was that the value of the car after those repairs was $1,400. Under these circumstances the most that can be said is that the consideration moving to the buyer was diminished by the defective steering wheel, and this of itself would not relieve the buyer of his obligation upon the contract on the ground of a failure of the consideration. Upon this record therefore, the court was right in the charge upon this point.

The defendant claims error in those portions of the charge dealing with the legal effect of the return of the car by the buyer to the seller. The court charged the jury as follows: "Now the car was not repossessed under the terms of the contract because the first monthly payment had not become due. . . . This accident happened before any payment had become due. There had been no default in the agreement, but apparently there was more or less of a tacit understanding, at any rate, that the car might be taken back because Levy did take it back and the company accepted it. Then you will have to regard the position of the parties, Levy giving up the car, The Paige Connecticut Corporation, who might have been acting very properly as agent for the plaintiff, taking back the car and having the repairs made and then disposing of it for the benefit of the defendant Levy. . . . That [the plaintiff's letter] shows, it seems to the court, that they had accepted the car. Whether or not the title had ever passed to Levy the court does not regard as controlling in this case. They had accepted the car and had agreed, in their own minds at any rate, to sell it and to apply the proceeds on Mr. Levy's account. . . . If they elected to give Levy credit for the car and sell it

at all, then it became their duty, as reasonable men and as good faith demanded, to dispose of the car for the largest possible price and within a reasonable time, and there the question of fact enters into the case and you gentlemen are the sole judges of that."

It is apparently true that when the seller accepted the return of the car after the accident, the buyer was not in default in his payments. However, the contract does provide: "Should the purchaser fail to keep said motor vehicle in first-class condition . . . the seller may take possession of said motor vehicle and all equipment, accessories or repairs thereon, wherever it may be found. . . ." The conclusion of the court, therefore, that the car was not legally repossessed cannot be said to be sustained by the record. The balance of the charge as quoted above, does not contain the clear and explicit directions for the determination of the rights of the parties to which they were entitled. Indeed, such directions could hardly have been given without a fuller development of the facts surrounding the acceptance and surrender of the car after the accident.

The defendant claimed that at the time the car was delivered to him by the seller, it carried an implied warranty that it was made of first-class material, of good workmanship and free from defects and reasonably fit for the purposes for which the parties intended it, and he asked the court to charge the jury that it was for them to say whether the parties intended by the terms of the contract to waive it, and if not, then he should have the benefit of it.

The court charged the jury that there was no such implied warranty available to the defendant because the right to it had been waived by the defendant in the contract. The contract did in fact provide: "Said motor vehicle is accepted without any express or im-

plied warranties unless written hereon at the date of purchase." Either an express or an implied warranty may be waived by express agreement of the parties if that agreement be fairly obtained and without fraud. *Wooldridge* v. *Royer*, 69 Md. 113, 14 Atl. 681; *Robinson & Co.* v. *Berkey & Martin*, 100 Iowa, 136, 69 N. W. 434; *Vanderbeek* v. *Francis*, 75 Conn. 467, 53 Atl. 1015; *Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137, 146, 43 N. E. 422; Mechem on Sales, § 1396; Elliott, Connecticut Law of Sales, pp. 223, 538. And where there has been an express refusal by the seller to warrant, none can be implied by law. *Hartin Commission Co.* v. *Pelt*, 76 Ark. 177, 188 S. W. 929; *Fauntleroy* v. *Wilcox*, 80 Ill. 477; *Burnett* v. *Hensley*, 118 Iowa, 575, 578, 92 N. W. 678; *Lynch* v. *Curfman*, 65 Minn. 170, 68 N. W. 5.

Defendant's counsel in their brief have characterized this provision of the contract as unconscionable and inequitable. It may fairly be said that a careful reading of the entire contract suggests that not only this but several other provisions to say nothing of its general purpose, may perhaps merit that characterization, but whether the contract in whole or in part should be held void on considerations of public policy, we do not deem to be a question presented to us on this appeal.

Since the errors to which we have made reference require a new trial, we suggest that the respective rights of the parties can only be determined by a fuller and more detailed finding of the facts bearing upon important questions of law to some of which we have adverted.

There is error and a new trial is ordered.

In this opinion the other judges concurred.