**SCIENTIFIC PRODUCTS, a Division of American Hospital Supply Corporation**

v.

**CYTO MEDICAL LABORATORY, INC.**

Civ. No. H–76–476.

United States District Court, D. Connecticut.

Oct. 16, 1978.

Thomas F. Parker, Gross, Hyde & Williams, William A. Taylor, Hartford, Conn., for plaintiff.

Jackson T. King, Jr., Juri E. Taalman, Norwich, Conn., John F. Scully, Cooney, Scully & Dowling, Hartford, Conn., for defendant.

### RULING ON MOTIONS FOR SUMMARY JUDGMENT ON THE DEFENSE OF USURY

BLUMENFELD, District Judge.

In this diversity suit the plaintiff seeks to recover a balance due from the defendant for goods and supplies sold to the defendant. In response to Requests for Admission the defendant admits that it received goods and supplies ordered from the plaintiff and that it has not paid for them in full. In addition to the dispute about the amount which is properly due and owing to the plaintiff,[1] the defendant also raises the special defense of usury. Both parties have moved for summary judgment to test the applicability of that defense. It is to those motions I now turn.

#### The Usury Defense

As a special defense to the plaintiff's claim, the defendant pleads that the practice by the plaintiff of imposing a monthly

---

1. Although the defendant denied, by its answer, the amount of its indebtedness as claimed by the plaintiff, that denial is grounded in the contention that its own records do not suffi-ciently reflect what goods the defendant received or whether there was non-payment for specific goods.

one and one-half per cent (1½%) charge on balances in arrears for more than 30 days constitutes usury and that consequently the defendant's debt to the plaintiff is unenforceable.

The statute upon which the defendant relies is Conn.Gen.Stat. § 37–4:

"*Loans at greater rate than twelve per cent prohibited.* No person and no firm or corporation or agent thereof, other than a pawnbroker as provided in section 21–44, shall, as guarantor or otherwise, directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive therefor interest at a rate greater than twelve per cent per annum."

The plaintiff contends that this usury statute has no application to the transactions between it and the defendant because in no instance out of which the defendant's indebtedness to plaintiff arose did the plaintiff "loan money" to it.

■ On the other hand, the defendant points out that since the plaintiff is seeking interest in excess of 12% per annum on the amount owed to it on the sales price for goods sold and delivered which was unpaid for more than 30 days after delivery, the interest being sought is "for the *forbearance of the debt* created by their delivery and acceptance." The defendant contends that the usury statute is applicable to such a transaction. Since this case is in a federal court solely because of diversity of citizenship, the court sits, in effect, only as another court of the state and must follow its law. *Guaranty Trust Co. v. York,* 326 U.S. 99, 108–09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

There is no doubt that the defendant's indebtedness to the plaintiff arose out of credit sales transactions, and not out of the

loan of money to the defendant. This the defendant does not dispute. Nor is it disputed that the terms on which the goods were sold required the defendant to pay for them in 30 days. If not paid for in 30 days, the plaintiff imposed a "service charge" thereafter of 1½% per month until paid. Title to the goods passed to the defendant on delivery. The question presented is whether Connecticut's usury statute should be construed to apply to interest charged after default in payment of a debt which arose out of a credit sale.

■ It should be noted at the outset that the prohibition against usury is purely a matter of statutory law. There is no common law of usury.[2]

Before proceeding directly to consider whether interest received "for the forbearance of the debt created by" the delivery and acceptance of goods is included within the statutory prohibition, it is useful to consider the source of this phrase which the defendant argues should be read into the statutory definition of usury so as to make the statute applicable to a debt created by a sale on credit. Defendant has called the court's attention to *Bridgeport L.A.W. Corp. v. Levy,* 110 Conn. 255 (1929), at 260, 147 A. 841, at 844, where the court observed:

"Usury is the taking of more interest for the use of money or forbearance of a debt than the law allows. 3 Parsons on Contracts (6th Ed.) p. 107. And 'an usurious contract, is one which stipulates for the payment of more than lawful interest, for the use of money, or forbearance of a debt.' 39 Cyc. p. 889."[3]

That this was only dictum is revealed by what the court said simultaneously:

"In an early case in this State it was said: 'It appears, that the plaintiff

**2.** For a brief history of the origin and development of usury laws, see Kafes, *Usury and Its Progeny: A Survey of Interest Regulations in Connecticut,* 43 Conn.Bar J. 220–258 (1969).

**3.** Usury laws have their origin in ancient religious canons, and have been enacted and amended by every state in the union. These several laws vary in many respects, and because there are so many of them and so many changes have been made in them it is under-

standable that any statement which embraces the whole complex of these laws can be regarded as no more than a general description of the law of usury. Such statements have a too open texture of concepts to be safely used as criteria for a correct interpretation of any specific statute. Nevertheless, it is not surprising that some of these generalizations have occasionally been used as background in court opinions dealing with questions of usury.

claimed to be a purchaser of the note. No facts are disclosed to show it was a pretended sale, and in substance a loan. . . . These principles will not be denied; that to constitute usury, there must be a loan, directly or indirectly; that a real sale, without any intent to loan, though it may be oppressive, cannot be usurious.' *Lloyd v. Keach*, 2 Conn. 175, 177, 178. To the same effect is the language of a Massachusetts opinion: 'While in a broad sense of the word the credit given for the price of goods sold may be called a loan, it is not a loan in the ordinary and usual sense of the word, and we think it is not a loan within the meaning of the statute. The language here used has reference primarily to money furnished to another to be repaid, and it is not intended to include credits given for goods sold upon which a mortgage is taken back by way of security.' *Day v. Cohen*, 165 Mass. 304, 305, 43 N.E. 109.

"The parties, however, must act in good faith, and where a contract appears as a sale but is in fact a mere cloak for an usurious loan, it will not be free from the taint of usury."

*Id.* at 260–61, 147 A. at 844 (citations omitted). In quoting the pointed explication of "a loan" in the Massachusetts case cited, the Connecticut court clearly indicated that for usury to apply the interest must be on a debt which arises from a loan of money.

There is sufficient logic to the contention of the defendant that interest for the forbearance of a debt created by the delivery and acceptance of goods stands on the same footing within the usury statute as interest on a loan of money to deserve serious consideration. While the syllogism has a certain surface seductiveness, it will not withstand analysis. As discussed below, Connecticut has indicated that such a debt would not support a charge of usury.

### The Time-Price Doctrine

The plaintiff invites the court to consider this case as involving a time-price sale. In *Zazzaro v. Colonial Acceptance Corp.*, 117 Conn. 251, 254, 167 A. 734, 735 (1933), Connecticut followed the general rule that "[w]hen property is sold on credit at an advance over the cash price, in good faith, and with no intention to defeat the usury laws, the transaction will not be held usurious though the difference between the cash price and the credit price, if considered as interest, would amount to more than the legal rate.[4] In *Zazzaro* the listed cash price of the car was $1,050, to that was added a "finance charge" of $106. The plaintiff paid $200 down, received an allowance of $250 for an old car, and gave a note for the balance of the purchase price payable in 12 monthly installments of $59 each. The seller then assigned all its rights under the sales contract to the finance company and endorsed the note to it without recourse. The contention that the note was usurious was rejected by the trial court. Five justices of the Connecticut Supreme Court affirmed saying: "The credit company assumes the risk of the collection of the installment payments, and its so-called 'finance charge' is generally held to represent the increased charge made to the conditional vendee because the sale is of that character." 117 Conn. at 254, 167 A. at 735.[5]

---

4. In *Bridgeport L. A. W. Corp. v. Levy*, 110 Conn. 255, 147 A. 841 (1929), upon which *Zazzaro* relied, the court used the example and followed the rationale of the United States Supreme Court in the oft-cited case of *Hogg v. Ruffner*, 66 U.S. (1 Black) 115, 119, 17 L.Ed. 38 (1861):

"If A offers to sell land to B for $10,000 in cash or for $20,000 payable in ten instalments, and B prefers to accept the second alternative in order to gain time, the contract is not usurious. Though it may then appear that B pays one hundred per cent for the forbearance so that the contract is usurious, such is not its true nature."

110 Conn. at 260, 147 A. at 844. This was followed by a direct quote from *Ruffner*:

" 'Such a contract has none of the characteristics of usury; it is not a loan of money.' *Hogg v. Ruffner*, 66 U.S. (1 Black) 115, 119, 17 L.Ed. 38."

110 Conn. at 260, 147 A. at 844.

5. But in reaching a contrary result in *Daniel v. First Nat'l Bank of Birmingham*, 228 F.2d 803 (5th Cir. 1956), the court treated the bank as supplying the funds to the buyer in a tri-party transaction and stated that in such a case, "[s]ome of the risk of collection is compensated for by varying the rate of interest *within legal*

Although the larger amount charged for a time-price sale is not considered to be interest, what may seem less clear is whether the debt upon which excessive interest is charged must arise from a loan of money in order to be usurious. The statute prohibits one who shall "loan money to . . . demand [or] accept . . . therefor interest at a rate of greater than twelve per cent per annum." It can be argued that a loan of money and the extension of credit on the sale of goods amount to the same thing. But the hypothesis that Connecticut's legislature intended a sale on credit as a variant expression of a loan of money for purposes of the usury statute is unsupported. The time to interpret the language of the statute is at hand.

### The Statute

#### I. Judicial Interpretation

In the first place, it would be quite clear to any lay person who went to a dictionary for a definition of usury that it had a specific meaning when the legislature enacted the usury statute. It is there defined:

> "usury, 1. Originally, the act or practise of lending money at interest, or of taking interest for money so lent: now archaic except in the sense of exorbitant or extortionate interest; specif. (*Law*), the demanding and taking, or contracting to receive, for the use of money as a loan, a rate of interest beyond what is allowed by law. . . . 2. A premium paid, or stipulated to be paid, for the use of money borrowed or returned, beyond the rate of interest established by law. 3. Figuratively, large increase added to anything returned. . . ."

*Funk & Wagnalls New Standard Dictionary* (rev. ed. 1958). The courts of Connecticut have stressed the concept that its usury statute prohibits excessive interest only for the loan of money. While Connecticut

courts have sometimes used general language that a contract for payment of interest in excess of the statutory limitations for the use of money or forbearance of a debt constitutes usury, no Connecticut case cited to me by the parties has held that the difference between the cash price and a time price is interest for the forbearance of a debt created by the delivery and acceptance of goods sold which is subject to the prohibition of its usury statute. On the other hand, every case listed under § 37–4 of the Conn.Gen.Stat.Ann. (West) in which a transaction was held to be usurious, involved a loan of money. To detail those cases would serve no useful purpose.

■ Although goods may be exchanged for cash, goods and cash are not the same thing either in the hands of a buyer or of a seller at the time of the delivery of goods or, as in this case, 30 days thereafter. It is not incumbent on the court to elaborate on the differences; it is sufficient to point out that Connecticut's legislature specified only a debt arising from a loan of money—and not any other kind of debt. One federal court has stated it differently,

> " 'On a bona fide sale of merchandise on a credit at a higher price than the purchaser would have to pay for cash, no charge of usury can be predicated, for the element of lending and borrowing money is absent.' "

*In re Bibbey*, 9 F.2d 944, 946 (D.Minn.1925) (quoting with approval *Smith v. Kaufman*, 145 Ark. 548, 224 S.W. 978). Connecticut's courts have never expanded the usury statute to include any transaction which was not a loan of money, and, on the basis of what has been considered above, I do not believe that they would do so in this case if it was before them for decision. Furthermore, the fact that the Connecticut statute provides a particularly severe penalty—lenders who violate the statute shall forfeit not only all interest but also all the principal, Conn.Gen.Stat. § 37–8 [6]—is an addition-

limits to cover such risk." *Id.* at 806 (emphasis added).

While some might hesitate to accept the *Zazzaro* court's reasoning that the finance charge was not interest, no one could deny that by applying the time-price doctrine to defeat usury

the case demonstrates that Connecticut courts will construe its usury statute strictly.

6. *Compare* 12 U.S.C. § 86, which provides that the penalty for violation of state usury laws by national banks is a forfeiture of all interest not paid with a right in the borrower to collect in a separate action double the amount of all inter-

al reason for not reading the usury statute more broadly than it is written.

## II. *Legislative Scheme*

■ Another way to examine the reach of the usury statute is to see how it fits with other legislation regulating credit transactions. To protect consumers against overreaching by retailers who sell on credit, whether through conditional sales or installment loans, Chapter 733, Conn.Gen.Stat. §§ 42–83 to 42–99, entitled "Retail Installment Sales Financing," does not touch upon interest charges except in one particular area. Section 42–85 establishes maximum financing charges on installment sales of motor vehicles, which range between 12¾% per annum on new motor vehicles to 26¾% per annum on those more than four years old prior to the date of sale. This statute demonstrates that when the legislature saw fit to regulate a time-price transaction it did so directly, rather than by fashioning an exemption to the usury statute. It is therefore clear that the Connecticut legislature treats time-price transactions as being outside the usury statute. The financing charge, if deemed interest, obviously exceeds the statutory maximum of 12% which is the limit for interest charges under the usury statute.

Former Chapter 654, Conn.Gen.Stat. §§ 36–348 to 36–363, entitled "Finance Charge Disclosures," embraced 16 sections.[7] It is of some interest in connection with the issue under consideration here because of its definition of a debtor in § 36–348(a): "(4) 'debtor' means the buyer in the case of a sale and the borrower in the case of a loan." In § 36–348(b) there were nine definitions relating to sales on credit; and in subsection (c) there were eight definitions relating to loans. Section 36–348(c)(4) stated, " 'loan' means (A) the creation of debt by the payment of money by the lender to the debtor or to a third party for the account of the debtor . . .. or (D) extension of the maturity date of any debt resulting from a loan." The comment has

been made about Connecticut's consumer credit legislation that it "is often confusing if not downright inconsistent." *See* Kafes, *supra* at 257. Nevertheless, it is clear enough that in Connecticut's legislative concern with the requirement of finance charge disclosures, although both a borrower of money and a buyer of goods were considered debtors, a buyer of goods was sharply distinguished from a borrower of money. There is sufficient difference between a debt created by a loan of money and one which is created by the purchase of goods to make it reasonable that they were also treated differently for purposes of usury penalties.

### Charges After Maturity

Upon analysis, the facts in this case do not present a typical time-price transaction. There is no dispute that the goods were sold at a price which was to be paid within 30 days. The allocation of interest to late payments and not to the price is clear. The charge of 1½% per month interest on the balance remaining unpaid after 30 days is clearly a charge for non-payment. It was not a separate agreement to postpone collection in return for an additional consideration. It might be argued that having here only a segment of a time-price transaction is no reason to forsake its tenets, but I am not inclined to extend the time-price doctrine so far.

■ Even if the transaction in this case were to be considered as one which could fall within the prohibition of the usury statute, it does not necessarily follow that charges at a rate in excess of that prohibited at the inception of a loan are usurious when imposed only on the unpaid balance after the loan has matured. There is no force in the mechanical argument that because the penalty for default is measured by a percentage of the amount of the debt it is an usurious interest charge. In a time-price sale a buyer does in reality agree to

---

est paid during a two-year period prior to the commencement of his suit to recover.

**7.** This chapter was repealed and replaced in 1969 by the Connecticut Truth in Lending Act,

Conn.Gen.Stat. §§ 36–393 to 36–417, patterned after the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*

pay more money in order to defer payment. Here there was no agreement that the defendant could defer payment.[8] Many cases have held that since charges of this nature are within the borrower's control, they are penalties for non-payment, rather than charges for the use of money, and, therefore, not affected by the usury laws. *See generally*, Annot., "Provision For Interest After Maturity At a Rate in Excess of Legal Rate As Usurious or Otherwise Illegal," 28 A.L.R.3d 449 (1969); 91 C.J.S. *Usury* § 31, at 608–611 (1955). The principle has been concisely stated in *Abbot v. Stevens*, 133 Cal.App.2d 242, 284 P.2d 159 (1955) as follows: "Where the excessive interest is caused by a contingency under the lender's control, . . . the transaction is usurious; [it is] otherwise when the contingency is under the borrower's control." The rationale for the rule has also been stated as concisely: "A debtor may not, by his voluntary act, render a transaction usurious which, but for such circumstances, would be entirely free from a claim of usury." 91 C.J.S. *Usury* § 31, at 609.

■ The conceptual distinction between default charges and interest for the use of money has been recognized in Connecticut. In Chapter 647, Conn.Gen.Stat. §§ 36–225 to 36–243 (which relates to small loans not in excess of $5,000), § 36–233(d) allows a licensed lender to "charge and collect a default . . . ." if any installment remains unpaid for ten or more consecutive days after it is due. In the case of consumer loans or credit transactions, former § 36–354(a) permitted charges (1) which "are not grossly unreasonable"; and expressly (3)(G) "charges for delinquency collection or deferral or which otherwise arise by reason of action or default of the debtor." Subsection (b), which could serve no purpose other than to emphasize the conceptual difference between delinquency charges after maturity and interest at the inception of a transaction, provides: "Such permitted charges shall not be considered a part of credit service or loan finance charges."[9]

### A Corporate Debtor

■ The prohibition against usury is based on the principle that it is unconscionable to charge excessive interest on loans of money to those who are forced by necessity to borrow it. *State v. Griffith*, 83 Conn. 1, 3–4, 74 A. 1068, 1069, *aff'd*, 218 U.S. 563, 31 S.Ct. 132, 54 L.Ed. 1151 (1910), states: "Statutes prohibiting usurious contracts are

---

**8.** The president of the defendant corporation filed an affidavit in support of its motion for summary judgment on its special defense of usury which states: "[T]o the best of my knowledge, Cyto Medical Laboratory, Inc. has never entered into any agreements regarding said interest rate and that said charges are unilaterally assessed by Scientific Products." Affidavit of Dr. Zannis Kalams.

**9.** Sections 36–348 through 36–363 were repealed and replaced by a new Truth in Lending Act. *See* note 7 *supra*. The provisions of § 36–354 of the Act of 1969 were not reenacted. However, the concept that a default charge is a penalty and not additional interest charge within the usury statute continues to be reflected in other statutes.

Connecticut's statutes also reveal that additional interest charges upon an unpaid loan, which would have made the loan usurious if imposed at its inception, do not convert the transaction into an usurious one. The Small Loans Act, Chapter 647, provides in § 36–233(d):

"If any instalment remains unpaid for ten or more consecutive days, including Sundays and holidays, after it is due, the licensee may charge and collect a default charge not exceeding the lesser of five dollars or five cents per dollar, or fraction thereof, of such scheduled instalment. Default charges may be collected when due or at any time thereafter, but may not be accumulated until the last payment date."

Similarly, the law regulating installment sale financing which deals with delinquency and collection charges, § 42–91, provides that the holder of any retail installment contract or installment loan contract may collect a delinquency and collection charge for default, not to exceed 5% or $5.00. In addition, the contract may provide for an attorney's collection fee of 15%, plus the court costs for collection.

The foregoing provisions allowing additional costs upon default for collection, although expressed in terms of interest charges, are regarded more conceptually as penalties rather than payment for the use of money, and generally are not affected by the usury laws. *See* Prather, *Mortgage Loans and the Usury Laws*, 16 Bus.Law. 181, 192 (1960).

for the prevention of extortion and unjust oppression by unscrupulous persons who are ready to take undue advantage of the necessities of others." Similarly, *In re Feldman*, 259 F.Supp. 218, 221 (D.Conn.1966) states: "The usury statutes were enacted for the weak and necessitous as shields against oppression; they are not offensive weapons used to confiscate the property of another to obtain an unjust windfall." Application of that principle is inappropriate to a commercial transaction with a corporation as a debtor. Connecticut has recognized this difference in Conn.Gen.Stat. § 37–9, which permits an interest charge of 18% on a loan to a corporation organized for profit and engaged in commercial, etc. activities.

*Conclusion*

■ Both the judicial and legislative treatment of debts arising from the sale of goods on credit clearly indicate that Connecticut adheres to the traditional, historical and analytical views that sales on credit are not equated with loans and that the prohibition of usurious interest applies only to loans of money. Although Connecticut's legislature has enacted a great amount of legislation to regulate the interest charges made by sellers of goods to consumers, it has not amended its long-standing statute prohibiting usurious interest charges on the loan of money. In the face of such long silence by the legislature, for this court to decide that the prohibition of Connecticut's usury statute should extend to debts arising out of other kinds of transactions than from a loan of money would be presumptuous. Such a decision calls for a policy judgment. Unless the courts are to become super-legislators, the elected legislators must be permitted to make that judgment.

For the foregoing reasons the special defense of usury is inapplicable. Accordingly, the defendant's motion for summary judgment on that defense is denied, and plaintiff's motion is granted. Furthermore, the defense should be stricken from the answer of the defendant, and, it is

SO ORDERED.